UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CORPORATION FOR PUBLIC BROADCASTING, *et al.* )<br><br>Plaintiffs, )<br><br>v. )<br><br>DONALD J. TRUMP, in his Official Capacity as President of the United States of America, *et al.* )<br><br>Defendants. ) | Case No. 1:25-cv-01305 |

# NOTICE OF SUPPLEMENTAL AUTHORITY[1]

On behalf of the Corporation for Public Broadcasting ("CPB") in the above-referenced case, I write to provide the Court with the supplemental case authority that it requested at last Wednesday's (May 14, 2025) hearing on the CPB's converted motion for a preliminary injunction. Specifically, the Court inquired whether:

(1) the President was an "officer" for statutory purposes in light of CPB's enabling statute's provision forbidding "any department, agency, ***officer***, or employee of the United States to exercise any direction, supervision, or control over educational television or radio broadcasting, or over [CPB] or any of its grantees or contractors…" 47 U.S.C. § 398 (emphasis added); and

---

[1] This Notice is a refiling of Docket No. 16. We are refiling this as a formal notice of supplemental authority in response to a Clerk's Notice of Error, as the previous notice was filed in the form of a letter.

(2) there was corporate law addressing the situation where if a plurality or concurrence of individuals/entities appoints an individual, then that same plurality or concurrence must act to remove the individual such that the Court could analogize to D.C. Code § 29-406.08(e).[2]

As discussed below, the answers to both legal questions posed by the Court are in the affirmative.

Controlling caselaw from the U.S. Supreme Court and the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit Court of Appeals"), and other federal courts have recognized the President as being an "officer, and, indeed, an "employee," for statutory purposes. Moreover, President Trump **himself** has represented to federal courts that he is plainly both an "officer" and "employee" of the United States. This, of course, is in addition to the Executive Branch repeatedly recognizing the President as an "officer." *See, e.g, Nat'l Wildlife Fed. v. U.S.*, 626 F.2d 917, 623-624 (D.C. Cir. 1980) (holding that the statutory reference to "officer or employee" in mandamus statute encompassed the President); *Carroll v. Trump*, 49 F.4th 759, 763, 770 (2d Cir. 2022) (holding that the President "fits comfortably" within the statutory reference to "officer or "employee" of the United States under the

---

[2] The Court's request arose in the context of the CPB's argument in its Reply Brief and during oral argument that Defendants' assertion that D.C. Code Section 29-406.08 allows the President to remove a CPB Board member because the section states that "[e]xcept as otherwise provided in the articles of incorporation or bylaws, a director who is appointed by persons other than the members may be removed with or without cause by those persons," is incorrect, as a matter of corporate law, given that it would require the President to do so with the advice and consent of the Senate, as those are the persons who appointed the board members. *See* 47 U.S.C. 396(c)(1).

Federal Employees Liability Reform and Tort Compensation Act of 1988); *Motions Sys. Corp. v. Bush*, 437 F.3d 1356, 1375 (Fed. Cir. 2006) (Gajarsa, J., concurring) ("There is, however, massive historical support—in the Constitution itself, in two centuries of Supreme Court jurisprudence, in significant opinions of the lower courts, in federal statutes, and in myriad other sources—for the proposition that the President is an 'officer' of his country").

Similarly, both corporate and municipal caselaw from around the country recognize that when multiple classes or groups are part of the "appointive" body or process, then those same classes need to be part of the removal process. *See, e.g., Kreppein v. Downs*, 72 N.Y.S.2d 150, 152 (App. Div. 1947) (holding that removal was void because two individuals were required to appoint and, therefore, an "act of removal requires the concurrence of both county judges").

## I. The President Is An "Officer" For Statutory Purposes

The Court inquired whether the President is an "officer of the United States" for statutory purposes. Controlling caselaw makes it clear that he is. While the President's constitutional role is unique, it has never excluded him from the general category of "officers" under federal statutes where that term is used broadly, unless it expressly states otherwise. Here, the Public Broadcasting Act of 1967 uses the term "officers" in its ordinary meaning and does not expressly provide otherwise.

### A. The Supreme Court Has Identified The President As An Officer Of The United States And Indeed, As The "Chief Constitutional Officer"

The proposition that the President is an "officer of the United States" finds its roots in long-standing Supreme Court precedent. For example, in *Franklin v.*

55608480.1

*Massachusetts*, cited by the Defendants in their own brief, Massachusetts and two registered voters brought an action under the Administrative Procedure Act challenging the method by which Congress apportioned seats in the United States House of Representatives. 505 U.S. 788, 799 (1992). While the Court determined, in this specific context, that the President was not an "agency" under the APA, it recognized that the President serves as a constitutional officer for statutory purposes. *Id*. at 799-800.

The Supreme Court has repeatedly recognized the President as "the chief constitutional officer of the United States." *Clinton v. Jones*, 520 U.S. 681, 699 n. 29 (1997) ("We noted in *Fitzgerald*: Article II [of Constitution]…establishes the President as the chief constitutional officer"); *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982). *See also Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 916 (2004) (Justice Scalia, writing as a single justice, referring to "the President and other officers of the Executive"); *Menard's Heirs v. Massey*, 49 U.S. 293, 309 (1850) (referring to "the President or some other officer"); *U.S. Ex. Rel. Goodrich v. Guthrie*, 58 U.S. 284, 310 (1854) (McLean, J., dissenting) (stating that "the President, like all the other officers of the government, is subject to the law"); *Embry v. U.S.*, 100 U.S. 680, 685 (1879) (holding that "[n]o officer except the President…can claim a contract right to any particular amount of unearned compensation"); *U.S. v. McDonald*, 128 U.S. 471, 473 (1888) (quoting *Embry*); *U.S. v. Am. Bell Tel.*, 128 U.S. 315, 363 (1888) (referring to "the president ... or any other officer of the government").

## B. The D.C. Circuit Court Of Appeals Recognizes The President As An Officer Of The United States For Statutory Purposes

In addition to well-established Supreme Court authority, controlling precedent from the D.C. Circuit Court of Appeals holds that the President is an "officer of the United States" for purposes of statutory construction. For example, in *Nat'l Treasury Employees Union v. Nixon*, the plaintiff sought a writ of mandamus requiring the President to grant pay adjustments as mandated by Federal Pay Comparability Act. 492 F.2d 587 (D.C. Cir. 1974). While the Court refrained from issuing the writ, it concluded that the President is an executive officer who is subject to mandamus proceedings under 28 U.S.C. § 1361, which encompass actions to "compel an **officer** or employee of the United States…to perform a duty." *Id.* at 592 n.4, 602, 618 (emphasis added).

In *Nat'l Wildlife Fed. v. U.S.*, the plaintiff sought declaratory and mandamus relief against alleged violations of the Forest and Rangeland Renewable Resources Planning Act of 1974. 626 F.2d 917 (D.C. Cir. 1980). Interpreting the statutory provision that "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an **officer** or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," the Court held that "[m]andamus is not precluded because the federal official at issue is the President of the United States." *Id.* at 923 (emphasis added).

Similarly, in *Swan v. Clinton*, the Court found that the "prerequisites for stating a cause of action under the mandamus statute are met" in an action against President Clinton. 100 F.3d 973, 976 n.1 (D.C. Cir. 1996).

### C. Other Federal Courts Recognize The President As An Officer And Indeed, An Employee, Of The United States For Statutory Purposes

Other federal courts have also recognized that the President is both an officer **and** an employee of the United States for statutory purposes. In *Carroll v. Trump*, the plaintiff filed suit alleging that the President defamed her. 49 F.4th 759 (2d Cir. 2022). The Attorney General intervened and certified that the President was entitled to substitution by the United States under the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"). *Id*. at 761. The Westfall Act applies only to a government employee, which is defined in the statute by incorporating the FTCA's definition of employee to encompass "officers or employees" of "the executive departments." *Id*. at 763. In reversing the lower court's determination that President Trump was not an officer or employee, the Second Circuit held that:

> "[T]he President of the United States fits comfortably within the statutory description's plain language," a conclusion which was reinforced by "[p]recedent and historical practice, together with the mischief the statute sought to remedy."

*Id*. at 770. Indeed, as the Second Circuit noted, other courts of appeals have "held that the term ["employee"] applies to high ranking officials of other branches of the federal government" such as members of congress and federal judges. *Id*. at 771 ("Given these interpretations of the 'employee' definition in the legislative and judicial branch contexts, it coheres to apply the same language to the President"). *See also Operation Rescue Nat. v. U.S.*, 147 F.3d 68, 71 (1st Cir. 1998) (stating in dictum that the FTCA covers "all officers, up to the president").

55608480.1

In *Motions Sys.*, the plaintiff brought suit against then-President George W. Bush, challenging the President's determination not to grant import relief to the domestic pedestal actuator industry under section 421 of the U.S.-China Relations Act of 2000, Pub. L. No. 106-286, 114 Stat. 880 (codified at 19 U.S.C. § 2451). While the Court ultimately held that the statutory scheme in question granted the President a sufficient amount of discretion to preclude judicial review, the concurring opinion (Gajarsa, J. and Newman, J.) found it necessary to assess jurisdiction under 28 U.S.C. § 1581, which provides that the Court of International Trade shall have exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or **its officers**" arising out of certain trade and tariff laws. *Id.* at 1365. Thus, the question was whether the category of "officer" identified in the statute includes the President. *Id.* The concurrence wrote that, despite not being an officer for Appointments Clause purposes, the President was nonetheless an officer for statutory purposes. *Id.* at 1372 ("An interpretation of the Constitution in which the holder of an 'office' is not an 'officer' seems, at best, strained").

Moreover, in *Humane Soc. of U.S. v. Clinton*, the court recognized that "[d]espite case law holding the President is not an agency within the meaning of the APA, **he continues to be an officer of the United States**, and thus is subject to being sued in this Court under section 1581(i)." 23 C.I.T. 127, 133 (1999), *aff'd*, 236 F.3d 1320 (Fed. Cir. 2001) (emphasis added). Similarly, in *Almond Bros. Lumber Co. v. U.S.*, the court noted that "[b]oth the President and the [United States Trade Representative] are officers of the United States" because "status as an officer of the

United States stems from the Constitution itself, for **the President is the essential constitutional officer under Article II of the Constitution**." 34 C.I.T. 370, 383 (2010) (emphasis added and citations omitted).

### D. President Trump, Himself, Has Represented To Federal Courts That He Is Plainly An Officer And Employee Of The United States

In *Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022), discussed above, President Trump filed briefs with both with the U.S. District Court for the Southern District of New York and the U.S. Court of Appeals for the Second Circuit in which he expressly represented and acknowledged that he was indeed both an employee and an officer of the United States under the plain language of the Westfall Act. For example, in the district court, President Trump asserted:

> ***The broad and sweeping language of the FTCA covers the President, who is fairly characterized as both an "officer" and "employee" of the government***. The Supreme Court has recognized that Article II, Section 1 of the Constitution "establishes the President as the chief constitutional officer of the Executive Branch," and indeed plaintiff acknowledges as much. Nixon v. Fitzgerald, 457 U.S. 731, 750, 102 S. Ct. 2690, 2701 (1982); see also Opp'n at 14 (describing "President as the sole officer under 'executive'"); U.S. Const. art. II, § 1, cl. 1, 8 (discussing President's "Office"). Likewise, contemporaneous definitions of the term "employee" encompass "one who works for wages or salary in the service of an employer," ***which would likewise apply to the President, who receives a salary for services rendered to the United States***. See Employee Webster's New Int'l Dictionary (2d ed. 1943); U.S. Const. art. II, § 1, cl. 7 ("The President shall, at stated Times, receive for his Services, a Compensation . . . .); United States v. Hatter, 532 U.S. 557, 563, 121 S. Ct. 1782, 1788 (2001) (President falls in "class of current federal employees").

*See* Case 1:20-cv-07311-LAK, Document 21 Filed 10/19/20 at p.8 (emphasis added).

Similarly, in his appellate brief filed with the Second Circuit, President Trump continued to acknowledge that he was "plainly" an employee of the government:

55608480.1

> The District Court's erroneous holding below that the Westfall Act does not apply to the President is contrary not only to the established understanding evidenced by those and other cases, <u>but it is contrary to the plain language of the Westfall Act, which by its terms applies to "any employee of the Government,"</u> 28 U.S.C. §§ 1346(b)(1), 2679(b). ***Presidents plainly are employees of the Government***, and Congress plainly intended Presidents to be covered by the Westfall Act -- notwithstanding the District Court's strenuous but strained and unsuccessful effort to show otherwise here …. Under Article II, section 1, the President is the "President of the United States of America," holds an "Office" -- ***which could only be an Office of the Government*** -- and "receive[s] for his [or her] services, a Compensation" from the Government. U.S. Const. art. II, § 1. And, not surprisingly given these facts, both Congress and the Supreme Court have referred to the President as an employee of the Government.

*See* Docket No. 20-03978 (2d Cir. Nov 25, 2020), BL-25, at pp. 5-6, 13 (emphasis added). As a result, President Trump is plainly an officer and employee under 47 U.S.C. § 398.

### E. The Executive Branch, For Over 200 Years, Has Considered The President An Officer

The Executive Branch's own lawyers have themselves concluded on many occasions that the President is an officer of the United States for statutory construction purposes. For example, executive branch counsel issued a published legal opinion concluding that a reference to "officers" in a general statutory provision – one that specifically mentioned senators, representatives, and delegates but left out the President – did, indeed, also include the President. *See 3 U.S. Op. Off. Legal Counsel 31*, 39 (Jan. 17, 1979). The provision at issue was Section 603 of Title 18 of the United States Code, which prohibits any "officer or employee of the United States" from making certain political contributions. *Id.* at 34. The Office of Legal Counsel concluded that "[a] number of arguments based on the language of § 602 and certain

statements contained in the legislative history of the Pendleton Act might be cited in support of the view that the President does not come within the class of persons mentioned in that provision. **However, the better view, in our judgment, is that the President does, indeed, fall within the terms of that provision**." *Id*. at 38 (emphasis added).

In another issued opinion, the United States Attorney General construed a statute applying to "the Secretary of the Treasury or any other officer of the Government" to include the President as such an officer. *See 38 U.S. Op. Atty. Gen. 445*, 448 (April 9, 1936). There, the Attorney General was evaluating a proposed Executive Order that would allow the Secretary of Agriculture to acquire real property by purchase, condemnation, or otherwise for game bird and animal refuges. *Id*. at 445. The basis for exercising the condemnation power was the Act of August 1, 1888, ch. 728, 25 Stat. 357 (U.S.C., Title 40, Sec. 257), which authorized "the Secretary of the Treasury or any other officer of the Government … to procure real estate for the erection of a public building or for other public uses." *Id*. at 447. The Attorney General concluded that "[i]n this instance **the President is the officer authorized to acquire land**. Hence the power of condemnation conferred by the statute upon the President must be delegated to the Secretary of Agriculture; and the proposed order effects such delegation." *Id* (emphasis added).

Indeed, for over two hundred years the President has been expressly referred to as an "officer" for statutory purposes by his own branch of government. *See,* e.g., *20 U.S. Op. Off. Legal Counsel No. 124* (May 7, 1976) (referring to "an officer who is

55608480.1

subject to control and removal by an officer other than the President"); *19 U.S. Op. Off. Legal Counsel 93* (June 3, 1986) (referring to "executive officers other than the President"); *6 U.S. Op. Off. Legal Counsel 751* (Dec. 14, 1982) (referring to "Executive officers other than the President"); *21 U.S. Op. Atty. Gen. 494* (Feb. 11, 1897) (referring to the Secretary of the Treasury or "any other officers save the President"); *13 U.S. Op. Atty. Gen. 479*, (June 27, 1871) (referring to the inability of "any officer but the President" to remit a criminal sentence); *1 U.S. Op. Atty. Gen. 566* (Sep. 27, 1822) (referring to the President as "the executive officer of the laws of the country").

## II. Analogous Corporate and Municipal Law On Removal Power Being Vested With The Same Members Constituting The Appointing Body

Given that the President is an "officer and employee" and therefore encompassed by the Broadcasting Act's prohibition against "any department, agency, **officer**, or employee, of the United States to exercise direction, supervision, or control … over CPB," 47 U.S.C. § 398(a), the D.C. nonprofit statute does not provide the Defendants with any alternative legal authority for removing CPB's directors. This is because Congress made it clear that CPB was only subject to the District of Columbia Nonprofit Corporation Act "to the extent consistent" with the Broadcasting Act. *See* 47 U.S.C. § 398(b). Where Congress expressly limited the governmental power to control CPB, any attempt to expand the ability to exercise control through the removal of directors under the D.C. nonprofit statute would be inconsistent with the Broadcasting Act and therefore forbidden by the Broadcasting Act.

Moreover, the D.C. nonprofit statute's provision that "a director who is appointed by persons other than the members may be removed with or without cause

55608480.1

<u>by those persons</u>," reflects a recognition in corporate law that when appointing process is made up of multiple classes or groups, those same classes must collectively participate in the removal process.  *See* D.C. Code § 29-406.08(e).  This is particularly important in the context of the Broadcasting Act, which requires that CPB's Board members are "appointed by the President, by and with the advice **and consent** of the Senate." *See* 47 U.S.C. § 396(c)(1).

This requirement – that those who **collectively** appoint must **collectively** remove – is rooted in corporate and municipal law.  For example, *Kreppein v. Downs*, 72 N.Y.S.2d 150, 151 (App. Div. 1947) concerned the suspension of a supervisor of probation. Under the applicable law – § 938 of the Code of Criminal Procedure – the power to appoint probation officers was vested in two judges of the county court. *Id*. at 152. However, the probation officer was suspended after he was found guilty of insubordination after a hearing initiated solely by one of the two judges on the county court.  The second judge not only disagreed with the charges and findings but also directed the probation officer to continue working. *Id*.  On appeal, the court ruled that given the appointment process was vested in two county judges, "consequently the act of removal requires the concurrence of both county judges."  As a result, the court held that the removal was void and of no effect because the first judge did not obtain the approval of the second judge before taking action against the supervisor. *Id*.

As further illustration, *Com. ex rel. Kelley v. Sheridan* involved the attempted removal of two members of the Board of Revision of Taxes by the county treasurer,

acting alone. 331 Pa. 415, 419 (1938).  Under the governing statutes, however, appointments to the Board were made not by a single official but by a combination of appointing authorities - - the county treasurer and the county controller - - **_each selecting different members_**.  Id. at 418.  The court noted that to "[give] the Constitution its full effect, the power of removal must be the same power, namely, the joinder of all of the elements or parts of the appointive power."  Id. at 419.  Accordingly, the court concluded "[t]o remove these members from the Board requires the joint action of this appointive power. Without the action of all of these factors, any attempted removal by one of them is abortive."  Id. at 420.[3]  This principle of a joint appointment process requiring joint removal is also codified in state statutes creating municipal entities.[4]

More broadly, corporate law recognizes the well-established principle that the authority to remove must be exercised collectively by those who shared in the power

---

[3] Nine years later, the Pennsylvania Supreme Court disapproved, in part, its prior ruling in *Sheridan* that dealt with appointments effectuated by a single person or entity but in conjunction with a different appointment as part of the same process (e.g. entity A appoints individual #1 and entity B appoints individual #2 as part of the same process) requiring joint entity participation of the removal process. *Com. ex rel. Reinhardt v. Randall*, 356 Pa. 302 (1947).

[4] For example, the New Hampshire Land and Community Heritage Investment Authority is "a body corporate and politic" and a "public instrumentality of the state." N.H. Rev. Stat. Ann. § 227-M:4(I).  Appointments are made by the following entities: (a) two members of the senate, appointed by the senate president; (b) two members of the house of representatives, appointed by the speaker of the house; and (c) eight public members, appointed by the governor and council.  *Id.* at § 227-M:4(II).  The statute further provides that "[m]embers appointed by the governor and council may be removed from office for cause, by the governor and council."  *Id. at* § 227-M:4(IV)(b). In other words, both appointment and removal authority rest with the same entity.

to appoint. *See, e.g, Schlafly v. Eagle Forum*, 970 F.3d 924, 935 (8th Cir. 2020) ("If a director is elected by a class of voting members entitled to vote, directors or other electors, that director <u>may be removed only by the same class of members entitled to vote, directors or electors which elected the director</u>") (emphasis added); *In Wingert vs. Scenic Heights Subdivision Prop. Owners Ass'n, Inc.*, Tex. App., 2008 WL 2778017 (Tex. App. Ct. July 16, 2008) ("In the absence of a provision providing for removal, a director may be removed from office, with or without cause, by the persons entitled to elect, designate, or appoint the director. If the director was elected to office, removal <u>requires an affirmative vote equal to the vote necessary to elect the director</u>.") (emphasis added); *Boatmen's First Nat'l Bank v. Southern Mo. Dist. Council of The Assemblies of God*, 806 S.W.2d 706, 714 (Mo. Ct. App. 1991) ("The body which appoints a director may also remove a director.").

As a result, even assuming that D.C. Code § 29-406.08(e) was not directly inconsistent with the protections afforded the CPB board members under the Broadcasting Act, given that the appointment process of CPB's board members involved the agreement of both the President and Senate, as a matter of corporate law, any removal would necessarily have to involve both the President and Senate, which was, of course, not done. To be clear, since this is an inquiry entirely within the scope of D.C. corporate law and entirely separate from traditional constitutional analysis, the fact that under the Constitution concurrence by the Senate in executive action is not allowed is irrelevant.

For purposes of the corporate law analysis only, it is clear that if two individuals have joint appointment authority for a director, both individuals have to agree to remove that director.  Again, **within the corporate law context only**, that means that the President and the Senate are simply two "individuals" because both participate in and are required for the nominee to become a director.

Date:  May 20, 2025

                      By: */s/ Jason W. McElroy*
                      Jason W. McElroy (D.C. Bar No. 502733)
                      Peter C. Nanov (D.C. Bar No. 230021)
                      SAUL EWING LLP
                      1919 Pennsylvania Avenue NW, Suite 550
                      Washington, D.C. 20006
                      Tel: (202) 295-6605
                      Email:     jason.mcelroy@saul.com
                                   peter.nanov@saul.com

                      Jeffrey S. Robbins (*Admitted Pro Hac Vice*)
                      Joseph D. Lipchitz (*Admitted Pro Hac Vice*)
                      SAUL EWING LLP
                      131 Dartmouth St., Suite 501
                      Boston, MA 02116
                      Tel: (617) 912-0941
                      Email:     jeffrey.robbins@saul.com
                                   joseph.lipchitz@saul.com

                      ***Counsel for Plaintiffs***

55608480.1

# **CERTIFICATE OF SERVICE**

I hereby certify that I caused one copy of the foregoing **Notice of Supplemental Authority** on all parties and counsel of record via the Court's CM/ECF system as follows:

Jeremy Samuel Bloch Newman
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Email: jeremy.s.newman@usdoj.gov

　　　　　　　　　　　　　　　　　　　*/s/ Jason W. McElroy*
　　　　　　　　　　　　　　　　　　　Jason W. McElroy

　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs*

55608480.1