IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE CORPORATION FOR PUBLIC BROADCASTING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his Official Capacity as President of the United States of America, *et al.*,<br><br>Defendants. | Civil Action No. 25-1305 (RDM) |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING

Defendants submit this response to Plaintiffs' supplemental brief. *See* Notice of Supplemental Authority, ECF No. 18 ("Pls.' Suppl. Br.").[1] As explained below, Plaintiffs are incorrect on both issues argued in their supplemental brief. First, 47 U.S.C. § 398(a) does not restrict the President's removal of Board members of the Corporation for Public Broadcasting (CPB), and certainly not with the requisite clarity the Supreme Court and D.C. Circuit have held is required to find a restriction on the President's authority to remove a presidential appointee. Second, the District of Columbia Nonprofit Corporation Act independently authorized the

---

[1] Plaintiffs also submitted a notice of Judge Beryl Howell's recent decision in *United States Institute of Peace v. Jackson*, 1:25-cv-804 (D.D.C. May 19, 2025). *See* ECF No. 19 (notice); ECF No. 19-1 (Memorandum Opinion of Judge Howell). The government respectfully disagrees with many aspects of Judge Howell's reasoning and intends to appeal and move to stay her ruling. Nonetheless, that case involves a distinct context, in which Congress explicitly enacted removal restrictions, specifying only three scenarios in which the U.S. Institute of Peace's Board members can be terminated, including removal for cause. *See* 26 U.S.C. § 4605(f)(1)-(3). The ultimate question before Judge Howell was accordingly whether that statute was constitutional. That is a fundamentally different question from the question before this Court, which is whether the Public Broadcasting Act should be read to restrict the removal of presidentially appointed Board members, despite the lack of an explicit removal restriction.

President's removal of the former Board members by providing that if a director is "appointed by" a person or persons, that person or persons may remove the director "with or without cause." D.C. Code § 29-406.08(e). Although the parties have not found corporate law cases addressing removal of directors appointed by the President and confirmed by the Senate, or other situations where a director is appointed by a single person with the concurrence of others, the Supreme Court has explained that as to Senate-confirmed presidential appointees, "[t]he advice of the Senate does not make the appointment. The President appoints." *Myers v. United States*, 272 U.S. 52, 122 (1926) (quoting 2 Bancroft, History of the Constitution of the United States, 192 (statement of then-Senator and future Chief Justice Oliver Ellsworth)). Therefore, "[t]he power of removal is incident to the power of appointment, not to the power of advising and consenting to appointment." *Id.*

I.      Section 398(a) Does Not Restrict the President's Removal of CPB Board Members

"Because of the background presumption that the President may remove anyone he appoints, Congress must *make it clear* in a statute if it wishes to restrict the President's removal power." *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) (emphasis added); *see also Collins v. Yellen*, 594 U.S. 220, 250 (2021) ("we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away'") (quoting *Shurtleff v. United States*, 189 U.S. 311, 316 (1903)). Plaintiffs argue that 47 U.S.C. § 398(a), which restricts "any department, agency, officer, or employee of the United States" from "exercis[ing] any direction, supervision, or control . . . over the [CPB]," prohibits the President from removing CPB Board members. It does not. And it certainly does not with the requisite clarity to overcome the background presumption of removability by the President, for two reasons.

*First*, the provision does not mention the President. Plaintiffs argue that the President is encompassed by the phrase "officer, or employee of the United States" in § 398(a). They cite a

2

variety of authorities colloquially referring to the President as an officer or employee or holding that the President is an officer or employee in a particular statutory context.  *See* Pls.' Suppl. Br. 4-11.  True enough, but there also exists authority to the contrary.[2]  In *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the Supreme Court held that "[o]ut of respect for the separation of powers and the unique constitutional position of the President," it "would require an express statement by Congress before assuming it intended" to restrict the President's authority in the Administrative Procedure Act (APA), even though the APA provided that it applied broadly to "each authority of the Government of the United States," *id.* at 800-01, language that could be read as applying to the President.  Similarly, the general language in § 398(a) does not expressly apply to the President and should not be read as restricting the President's authority.  Furthermore, other provisions of the Public Broadcasting Act specifically mention the President, *see* 47 U.S.C. § 396(c)(1), (c)(2), (c)(3), (c)(5), (c)(7), (l)(2)(B), which supports the inference that Congress deliberately omitted the President from § 398(a).  *See Collins*, 594 U.S. at 248 ("when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)).

*Second*, even if the Court assumes that § 398(a) applies to the President, it does not clearly preclude removal of CPB Board members.  The provision does not even mention removal.

---

[2] *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497-98 (2010) ("The people do not vote for the 'Officers of the United States.'  Art. II, § 2, cl. 2.  They instead look to the President . . . ."); *United States v. Mouat*, 124 U.S. 303, 307 (1888) ("Unless a person in the service of the government, therefore, holds his place by virtue of an appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States."); Joseph Story, 2 *Commentaries on the Constitution* § 791 ("[T]he enumeration of the president and vice president, as impeachable officers, was indispensable. . . . [T]he [impeachment] clause . . . does not even affect to consider them officers of the United States.").

3

Plaintiffs argue that a removal restriction is implied in the statute's restriction on exercising "control over . . . the [CPB]," 47 U.S.C. § 398(a), but that language is best read to restrict control over the CPB's activities rather than the identity of the CPB Board members. Indeed, § 398(a) could not be read to prevent the President from controlling who serves on the CPB Board, because the statute explicitly gives the President authority to appoint each Board member of the CPB. *See id.* § 396(c)(1) ("[CPB] shall have a Board of Directors . . . consisting of 9 members *appointed by the President* by and with the advice and consent of the Senate.") (emphasis added); *see also In re Hennen*, 38 U.S. 230, 259 (1839) ("the power of removal [is] incident to the power of appointment"). Plaintiffs' interpretation thus violates the longstanding principle that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 180 (2012); *see also FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959) ("our task is to fit, if possible, all parts [of a statute] into an harmonious whole"). At a minimum, § 398(a) falls short of "mak[ing] it clear" that Congress "wishes to restrict the President's removal power," *Severino*, 71 F.4th at 1044, or providing "plain language" to take away the President's removal power, *Collins*, 594 U.S. at 250.

II. **The District of Columbia Nonprofit Corporation Act Confirms the Validity of the President's Removal of the Former Board Members**

Even if the Public Broadcasting Act did not itself authorize the President's removal of the former Board members (which it does), the same result would follow from the District of Columbia Nonprofit Corporation Act. *See* 47 U.S.C. § 396(b) ("The Corporation shall be subject to the provisions of this section, and, to the extent consistent with this section, to the District of Columbia Nonprofit Corporation Act."). That statute provides: "Except as otherwise provided in the articles of incorporation or bylaws, a director who is appointed by persons other than the members may be

4

removed with or without cause by those persons." D.C. Code § 29-406.08(e). This statute establishes a default rule that the person or persons whom a director "is appointed by" "may . . . remove[]" that director "with or without cause." *Id.* Here, CPB Board members are appointed by the President alone, albeit with the advice and consent of the Senate. *See* 47 U.S.C. § 396(c)(1) (CPB Board members are "appointed by the President, by and with the advice and consent of the Senate"). Therefore, the President, as the appointing authority, has authority to remove at will.

The Court asked at the hearing if corporate case law existed addressing removal of a director where "a person appoints," but that appointment "requires concurrence." *See* Transcript of May 14, 2025 Hearing, 44:1-5. Neither Plaintiffs nor Defendants have located any such case law. All of the cases cited by Plaintiffs, *see* Pls.' Suppl. Br. 12-14, involve appointments jointly by multiple individuals or a body of individuals, or election by a class of individuals, not appointment by a single person with the concurrence of another person or body. *See, e.g., Kreppein v. Downs*, 272 A.D. 452, 454 (N.Y. App. Div. 2d Dep't 1947) (statute provided for appointment of probation officers by "the judges of the County Court of Queens County, or a majority of them," which required the joint appointment of the court's two judges); *Com. ex rel. Kelley v. Sheridan*, 331 Pa. 415, 417, 200 A. 102, 103 (1938) (statute provided that members of Board of Revision of Taxes were either appointed by County Treasurer, County Controller, or "by the County Treasurer and the County Controller acting jointly")[3]; *Schlafly v. Eagle Forum*, 970 F.3d 924, 935 (8th Cir. 2020) (quoting statute providing that a director "elected by a class of voting

---

[3] Although the Pennsylvania Supreme Court in *Kelly* held that removal of any board members must be performed jointly by the County Treasurer and the County Controller, several years later the Pennsylvania Supreme Court expressly "disapprove[d] of Commonwealth ex rel. Kelly v. Sheridan." *Com. ex rel. Reinhardt v. Randall*, 356 Pa. 302, 306, 51 A.2d 751, 753 (1947). Therefore, apart from being factually inapposite, *Kelly* is no longer good law.

members . . . may be removed only by the same class of members"); *Wingert v. Scenic Heights Subdivision Prop. Owners Ass'n, Inc.*, No. 03-07-00297-CV, 2008 WL 2778017, at *5 & n.7 (Tex. App. July 16, 2008) (quoting statute establishing default rule that "[i]f the director was elected to office, removal requires an affirmative vote equal to the vote necessary to elect the director"); *Boatmen's First Nat. Bank of W. Plains v. S. Missouri Dist. Council of the Assemblies of God*, 806 S.W.2d 706, 714 (Mo. Ct. App. 1991) (holding that a church's bylaw allowing for temporary supervision by the local district of a religious order in the event of disagreement between the pastor and church board members did not violate state law holding that "[t]he body which appoints a director may also remove a director").

Defendants also have not found case law from the corporate law context addressing the removal of a director who is appointed by one person with the concurrence of another person or body. However, in *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court made clear that Senate-confirmed presidential appointees are appointed by the President—not appointed by the Senate. Therefore, as applied to Senate-confirmed presidential appointees, the principle that removal is incident to appointment means that the President alone has the authority to remove, without the confirmation of the Senate. In *Myers*, Chief Justice Taft recounted at length the Decision of 1789, in which the First Congress decided that the President alone should have authority to remove Senate-confirmed presidential appointees. As Chief Justice Taft recounted, this debate presented the question: "Does [the Senate's advice and consent authority] make the Senate part of the removing power? And this, after the whole discussion in the House is read attentively, is the real point which was considered and decided in the negative . . . ." *Id.* at 119. Chief Justice Taft in particular gave "great weight" to the views of Oliver Ellsworth, a Senator in the First Congress and later a Chief Justice, who explained: "The advice of the Senate does not

6

make the appointment. The President appoints." *Id.* at 122 (quoting 2 Bancroft, History of the Constitution of the United States, 192). As Chief Justice Taft concluded: "The power of removal is incident to the power of appointment, not to the power of advising and consenting to appointment." *Id.*; *see also* Saikrishna Prakash, *New Light on the Decision of 1789*, 91 Cornell L. Rev. 1021, 1023, 1076 (2006) (explaining that some in the First Congress "argued that because the Senate's consent was necessary to appoint, its consent was necessary to remove (the advice-and-consent theory)," but that a majority of Congress rejected this view and "endors[ed] the President's right to remove these officers by virtue of his executive power").

The D.C. Nonprofit Corporation Act implements the same principle as a matter of corporate law that Chief Justice Taft affirmed as a matter of constitutional law: "[t]he power of removal is incident to the power of appointment." *Myers*, 272 U.S. at 122. Notably, the statute provides that a board member may be removed by the person or persons whom the board member is "appointed by," not the persons (if any) who provide advice and consent to such appointment. D.C. Code § 29-406.08(e). Chief Justice Taft (quoting Chief Justice Ellsworth) correctly described the nature of the Senate's advice and consent power: "The advice of the Senate does not make the appointment. The President appoints." *Myers*, 272 U.S. at 122. Thus, under the plain terms of the D.C. Nonprofit Corporation Act, CPB Board members are "appointed by" the President (not the President and the Senate) and can be removed by the President (without confirmation of the Senate) "with or without cause." D.C. Code § 29-406.08(e). Although *Myers* is a constitutional law case and not a corporate law case, it is the leading authority on the nature of presidential appointment and Senate confirmation. The Court should not construe District of Columbia corporate law as adopting a conception of Senate confirmation that is fundamentally at odds with the view of Chief Justice Taft and the Supreme Court in *Myers*.

7

Finally, the Court should reject Plaintiffs' view that the D.C. Nonprofit Corporation Act requires Senate confirmation of presidential removals of CPB Board members because such a construction would raise severe constitutional doubt under *INS v. Chadha*, 462 U.S. 919 (1983). In *Chadha*, the Supreme Court held that statutes authorizing one-house legislative vetoes were unconstitutional and held that generally, Congress can only act through the Constitution's procedures of bicameralism and presentment. *See id.* at 955-56. This Court should not construe D.C. corporate law[4] in a way that would create such severe constitutional doubt.

Dated: May 21, 2025

Respectfully Submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*

---

[4] Unlike state legislation, District of Columbia legislation is not enacted by a sovereign distinct from the federal government. The Constitution grants Congress plenary legislative authority over the District of Columbia, *see* U.S. Const., art. I, § 8, cl. 17, and the D.C. Council only has authority to enact legislation such as the D.C. Nonprofit Corporation Act pursuant to power delegated by Congress through the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. 93-198, 87 Stat. 774, 785-88, §§ 401-404 (1973).