UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORPORATION FOR PUBLIC BROADCASTING, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP,<br>in his official capacity as President of the United States of America, et al.,<br><br>            Defendants. | Civil Action No. 25-1305 (RDM) |

**DECLARATION OF EVAN SLAVITT**

I, Evan Slavitt, do hereby state under oath as follows:

1.    I am Executive Vice-President and General Counsel of the Corporation for Public Broadcasting ("CPB"). As the Public Broadcasting Act of 1967, 47 U.S.C. § 396, (the "Act") provides and authorizes, CPB is a private nonprofit corporation. Since its creation, CPB has been the steward of Congressionally appropriated funds for public broadcasting and the largest single source of funding for public radio, television, and related online and mobile services. As General Counsel, I am responsible for all legal affairs concerning CPB.

**CPB Is A Private, Nonprofit Corporation, Not A Government Agency, Much Less A Part of The Executive Branch**

2.    CPB is a Congressionally authorized nonprofit corporation that was established by 15 private citizens who served as its incorporators. Specifically, Section 396 of the Act provides:

> b) **Establishment of Corporation; application of District of Columbia Nonprofit Corporation Act**. There is authorized to be established a nonprofit corporation, to be known as the "Corporation for Public Broadcasting", which will not be an agency or establishment of the United States Government. The Corporation shall be subject to the provisions of this section, and, to the extent consistent with this section, to the District of Columbia Nonprofit Corporation Act….

1

> (4) The members of the initial Board of Directors shall serve as incorporators and shall take whatever actions are necessary to establish the Corporation under the District of Columbia Nonprofit Corporation Act.

47 U.S.C. § 396(b) (emphasis added).

3. As set forth in CPB's Articles of Incorporation, which are attached hereto as Exhibit A, CPB was incorporated on March 27, 1968 by 15 individuals, none of whom were government officials or employees. *See* Exhibit A at Article IX.

4. The Act does not dictate that any member of the executive branch sit on its Board of Directors and, indeed, notably for present purposes, at no time in its 58-year existence has a member of the executive branch ever sat on its Board. Moreover, the Act provides that each Board member shall serve for a six-year term, which is beyond the four-year tenure of any presidential term. *See* 47 U.S.C. § 396(c)(5).

**CPB Is A Private, Nonprofit Corporation, Not A Government Agency**

5. In creating CPB, Congress made clear that it was "a private corporation [to] be created to facilitate the development of public telecommunications and to afford maximum protection from extraneous interference and control." *Id*. at § 396(a)(10).

6. To ensure that CPB is insulated from partisan governmental interference and control and to ensure its autonomy, Congress expressly provided that "[CPB] will not be an agency or establishment of the United States Government. The Corporation shall be subject to the provisions of this section, and, to the extent consistent with this section, to the District of Columbia Nonprofit Corporation Act." *Id*. at § 396(b). Moreover, the U.S. Government, including all departments and agencies, has no ownership interest in CPB.

7. In addition, the statute expressly forbids "any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over educational

television or radio broadcasting, or over [CPB] or any of its grantees or contractors…" *Id*. at § 398(a).

8. Establishment of the CPB and the statutory scheme of the Act were a product of a Congressional determination that strong safeguards were necessary to ensure that federal funding of programming did not carry with it any political influence on the contents of that programming. Thus, the Senate Report accompanying the Act carefully pointed out:

> There is general agreement that for the time being, Federal financial assistance is required to provide the resources necessary for quality programs. It is also recognized that this assistance should **in no way involve the Government** in programming or program judgments. An **independent** entity supported by Federal funds is required to provide programs **free of political pressures**. The Corporation for Public Broadcasting, a nonprofit private corporation, authorized by title II of S. 1160 provides such an entity.

S.Rep.No.222, 90th Cong., 1st Sess. 4, 11 (1967) (emphasis added).

9. In other words, Congress conceived of CPB as an entirely private corporation that also acts as a vehicle to infuse federal funds into public broadcasting without the introduction of government direction or control, particularly from the executive branch, which Congress accomplished by withholding from CPB any form, pure or quasi, of legislative, judicial, or regulatory power.

10. Indeed, President Johnson, the chief officer of the Executive Branch, in his public remarks in signing the Act on November 7, 1967 expressly emphasized that CPB was to remain free from governmental control and would be independent from any such control:

> This Corporation will assist stations and producers who aim for the best in broadcasting good music, in broadcasting exciting plays, and in broadcasting reports on the whole fascinating range of human activity. It will try to prove that what educates can also be exciting. It will get part of its support from our Government. But it will be carefully guarded from Government or from party

3

<u>control. It will be free, and it will be independent</u>-and it will belong to all of our people.

Exhibit B -- Remarks Upon Signing the Public Broadcasting Act of 1967 (emphasis added). Consistent with the purpose and express terms of the Act, in the entirety of CPB's nearly 60-year history, neither CPB nor any member of CPB's board has ever reported to, taken direction from, or been subject to the control of the Executive Branch.

11. CPB operates from private offices leased from a private corporation located in downtown District of Columbia. CPB does not share any space with any government agency.

12. The CPB has its own independent non-governmental auditors, Grant Thornton, as dictated by the Act. *See* 47 U.S.C. § 396(l)(1)(A).

13. In the course of its business, CPB has no ability to regulate any aspect of public media, resolve disputes among stations, dictate content of public media stations, or render any form of judgment over any other entity or organization. CPB does not, and cannot, infringe on or aid the executive branch's ability to carry out or implement the laws. By way of limited example, CPB:

- Does not have any *ex officio* governmental members on its Board;
- Has a board that is required to be divided by party;
- Is not subject to Freedom of Information Act requests;
- Is not designated as or referred to as a federal entity under any other statute;
- Does not and cannot issue any regulations;
- Does not and cannot regulate or adjudicate disputes between public radio and television stations and members of the public;
- Is forward-funded for two years, and has been for the last forty-five years (that is, appropriations made, for example, in 2025 are for its 2027 fiscal year) to insulate it from politically motivated interference;

- Receives its funds directly from the Treasury and not through any governmental department or agency;

- Has its own statutorily created inspector general and is not subject to the jurisdiction of any other governmental department or agency with regard to its directly appropriated funds;

- Is prohibited from making content or dictating content to any station;

- Is not required to attend frequent oversight hearings in front of Congress, aside from CPB's annual request for appropriations; and

- Does not receive instructions for day-to-day operations from any political branch.

**The Executive Branch Has Itself Recognized That CPB Is A Non-Governmental Entity**

14. The United States Government Manual, which has been published for over 80 years by the National Archives and Records Administration, itself being an executive agency, in the Federal Register, describes itself as the "official handbook" of the Federal Government and provides information on the agencies of the legislative, judicial, and executive branches. It also includes information on quasi-official agencies; international organizations in which the United States participates; and boards, commissions, and committees. *See* https://www.usgovernmentmanual.gov. However, the United States Government Manual does not even mention the CPB anywhere among its listing of governmental and quasi-governmental agencies covering over 2,000 pages. This is consonant with other federal statutes defining "executive departments," "government corporation," and "executive agency," none of which identify the CPB or apply to the CPB. *See* 5 U.S.C. §101 (setting forth those entities qualifying as executive departments, not including CPB); 5 U.S.C. § 103 (defining "government corporation" as a "corporation owned or controlled by the Government of the United States"); 5 U.S.C. § 105 (defining "executive agency" as "an executive department, a Government corporation").

15. While this case was pending, CPB was engaged in litigation against the Federal Emergency Management Agency ("FEMA") in connection with its arbitrary and capricious acts in freezing and shutting of access to appropriated funding for the 2022 Next Generation Warning System grant (the "NGWS Grant") that FEMA awarded to CPB. That case is captioned as: *The Corporation for Public Broadcasting v. The Federal Emergency Management Agency, et al.*, 1:25-cv-00740-TJK (D. D.C.). In order to justify its withholding of funds, FEMA's Acting Associate Administrator for the Office of National Continuity Programs, Thomas Breslin, submitted a sworn declaration to the Court, a copy of which is attached as Exhibit C.

16. To justify its freezing of funds to CPB under the NGWS Grant, Mr. Breslin represented to the Court that CPB's funds were frozen under a January 28, 2025 directive issued by the Secretary of Homeland Security concerning grants to Non-governmental Organizations:

> Since being sworn in on January 25, 2025, the Secretary of Homeland Security ("Secretary") has issued several written and verbal directives regarding payments made by the Department, all of which were designed to ensure that any payments made by the Department are consistent with law and do not promote fraud, waste, or abuse. One such directive is a January 28, 2025 Direction on Grants to Non-governmental Organizations, a copy of which is attached as Exhibit 1
>
> Pursuant to the Secretary's January 28, 2025 direction, FEMA paused funding for all of its grants programs on February 11, 2025 and began to institute a manual review process under its inherent authority to monitor awards; review its grant records and expenditures; and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient. This manual review applied to the NGWS program and required Plaintiff to submit additional documentation for FEMA to review prior to FEMA releasing any funds.

Exhibit C -- Breslin Decl. at ¶¶5-6 (emphasis added).

**When The CPB Was Incorporated In 1968, D.C. Code § 29-406.08(e) Did Not Exist**

17. In this case, the government has taken the position that even if the President has no power under the Broadcasting Act to remove CPB's directors, the D.C. Nonprofit Corporation

6

Act, D.C. Code § 29-406.08(e), provides that: "Except as otherwise provided in the articles of incorporation or bylaws, a director who is appointed by persons other than the members may be removed with or without cause by those persons." However, the Broadcasting Act provides that CPB shall be subject to the D.C. Nonprofit Corporation Act to the extent consistent with the Broadcasting Act. 47 U.S.C. § 396(b). Moreover, when the Broadcasting Act was enacted by Congress, D.C. Code § 29-406.08(e) did not exist. Rather, under the 1962 D.C. Nonprofit Corporation Act, in effect when Congress authorized the creation of CPB, the relevant removal provision provided:

> A director may be removed from office pursuant to any procedure therefor provided in the articles of incorporation or the bylaws, and if none be provided may be removed at a meeting called expressly for that purpose, with or without cause, by such vote as would suffice for his election.

Public Law 87-569 §19(d). The 1962 D.C. Nonprofit Corporation Act remained largely unchanged for close to 50 years.

18. In 2011, the D.C. Council enacted a revised D.C. nonprofit corporation code which overhauled the 1962 act, which included D.C. Code § 29-406.08(e). However, Congress has not amended the Broadcasting Act to adopt D.C. Code § 29-406.08(e)'s removal provisions.

**Three Board Members of CPB Received Purported Notices of Termination, Unlawfully Attempting to Remove Them From Their Positions**

19. On April 28, 2025, three members of the Board of Directors for CPB – Laura G. Ross, Diane Kaplan, and Thomas E. Rothman – received an email purportedly from Trent Morse, the Deputy Director of Presidential Personnel for the Executive Office of the President, purporting to notify the board members that their positions on the Board of Directors for CPB were terminated.

20. The purported notices stated, in full:

7

> On behalf of President Donald J. Trump, I am writing to inform you that your position on the Corporation for Public Broadcasting is terminated effective immediately.
>
> Thank you for your service.

21. The purported notices did not identify the authority with which the President was purporting to terminate the Board members, nor did it reconcile with the fact that the President's authority to remove Board members or interfere with CPB's independence is clearly prohibited by Congress.

22. The emails were sent to an email address, concur_board@cpb.org, that is monitored by CPB staff but not by the individual board members.

23. Below are true and accurate screenshots of the purported notices sent to each of the three Board members.

**From:** Morse, Trent M. EOP/WHO <Trent.M.Morse@who.eop.gov>
**Sent:** Monday, April 28, 2025 9:26 AM
**To:** Concur_Board <concur_board@cpb.org>
**Subject:** Message from PPO

> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Tom,

On behalf of President Donald J. Trump, I am writing to inform you that your position on the Corporation for Public Broadcasting is terminated effective immediately.

Thank you for your service.

Trent Morse
Deputy Director
Presidential Personnel

> **From:** Morse, Trent M. EOP/WHO <Trent.M.Morse@who.eop.gov>
> **Sent:** Monday, April 28, 2025 9:27 AM
> **To:** Concur_Board <concur_board@cpb.org>
> **Subject:** Message from PPO
>
> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
>
> Diane,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position on the Corporation for Public Broadcasting is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

> **From:** Morse, Trent M. EOP/WHO <Trent.M.Morse@who.eop.gov>
> **Sent:** Monday, April 28, 2025 9:26 AM
> **To:** Concur_Board <concur_board@cpb.org>
> **Subject:** Message from PPO
>
> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
>
> Laura,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position on the Corporation for Public Broadcasting is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

24. CPB's Board of Directors is a five-person board. Under the D.C. Nonprofit Corporation Act, a board must have and maintain at least three directors. *See* D.C. ST § 29-406.03. The President's act of purporting to remove three members of CPB's board takes the board below the three-person requirement for a nonprofit corporation under the D.C. nonprofit statute. Moreover, the purported termination also would deprive the CPB of a quorum for any board meeting or resolution.

25. On April 29, 2025, just one day after the President's purported termination of three members of CPB's board, DOGE officials sent an email to the two remaining CPB Board members. Specifically, the two Board members received an email at 3:02 p.m. purportedly from

9

Nate Cavanaugh, a "member of the DOGE team working at the General Services Administration."

Mr. Cavanaugh stated:

> My name is Nate Cavanaugh – I'm a member of the DOGE team working at the General Services Administration.
>
> Are you available for a meeting tomorrow or on Thursday? I would like to learn more about the Corporation for Public Broadcasting and discuss getting a DOGE team assigned to the organization.
>
> Best,
> Nate

Below is a true and accurate screenshot of the email sent to the two Board members who did not receive a purported notice of termination.

```
From: Nate Cavanaugh - Q2 <nate.cavanaugh@gsa.gov>
Sent: Tuesday, April 29, 2025 3:02 PM
To: Concur_Board <concur_board@cpb.org>; lsembler@cpb.org
Cc: Justin Fox - A <justin.fox@gsa.gov>; Aimonetti, Justin W. EOP/DOGE <Justin.W.Aimonetti@doge.eop.gov>; Jonathan Mendelson - A <jonathan.mendelson@gsa.gov>
Subject: Meeting Request | DOGE
```

> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ruby, Liz,

My name is Nate Cavanaugh – I'm a member of the DOGE team working at the General Services Administration.

Are you available for a meeting tomorrow or on Thursday? I would like to learn more about the Corporation for Public Broadcasting and discuss getting a DOGE team assigned to the organization.

Best,
Nate

--
Nate Cavanaugh
202-941-1935

26. In terms of DOGE's reference to its team "working at the General Services Administration," at no time has the General Services Administration been involved in the operation, oversight, or control of CPB.

27. On April 29, 2025, I responded to Mr. Cavanaugh, stating in part:

> CPB is a private entity incorporated under the laws of the District of Columbia. While its funding largely comes from Congress, it is not an agency or department

10

of the federal government. It certainly is not part of the executive branch. The following is an explicit determination of its statutory creation:

"There is authorized to be established a nonprofit corporation, to be known as the "Corporation for Public Broadcasting", which will not be an agency or establishment of the United States Government." 47 U.S.C. § 396(b)."

Accordingly, neither DOGE, the GSA, nor any other component of the executive branch has any role supervising or having any activity relating to CPB. Thus, DOGE's resources might best be focused elsewhere on some aspect of the government within its jurisdiction.

Exhibit D – April 29, 2025 Email From Slavitt to Cavanaugh.

**The Executive Branch Does Not Have The Ability To Remove Any Of CPB's Board Members, Officers, Or Employees**

28. Congress enacted the Act without providing the executive branch with any authority to remove a Board member, with or without cause. Congress communicated this intent in five ways.

29. First, Congress made clear that CPB is not a federal agency subject to the President's authority, but rather a private corporation:

[CPB] will not be an agency or establishment of the United States Government. The Corporation shall be subject to the provisions of this section, and, to the extent consistent with this section, to the District of Columbia Nonprofit Corporation Act.

47 U.S.C. § 396(b).

30. Second, Congress clarified that the Board Members are not officers of the United States, and thus are not within the removal provisions of Article II of The United States Constitution:

[T]he members of the Board shall not, by reason of such membership, be deemed to be officers or employees of the United States.

*Id*. at § 396(d)(2).

11

31. Third, the Act mandates that Board members cannot be affected or otherwise controlled or disturbed by the actions of the government, forbidding:

> [A]ny department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over educational television or radio broadcasting, or over [CPB] or any of its grantees or contractors….

*Id*. at § 398(a).

32. Fourth, Congress did consider removal mechanisms, and limited removal to only one scenario by which a Board member can be removed:

> Members of the Board shall attend not less than 50 percent of all duly convened meetings of the Board in any calendar year. A member who fails to meet the requirement of the preceding sentence shall forfeit membership and the President shall appoint a new member to fill such vacancy not later than 30 days after such vacancy is determined by the Chairman of the Board.

*Id*. at § 396(e)(7). This removal power, moreover, is self-executing; it does not require or permit any action by any person, including the President, to have effect.

33. Fifth, Congress omitted the statutory provision, which appears in many statutes establishing a typical federal agency, that Board members serve at the pleasure of the President. In fact, aside from the members' statutory instructions to serve as stewards of specific congressional appropriations, Congress never mandated that the Board members serve at the pleasure of anyone, including the President. Instead, Board members serve for fixed terms. *Id*. at § 396(b)(5).

Signed under the pain and penalties of perjury this 24th day of July, 2025.

*Evan Slavitt*
Evan Slavitt, General Counsel