## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
THE CORPORATION FOR             )
PUBLIC BROADCASTING, et al.,    )
                                )
        Plaintiffs,             )
                                )
   v.                           )      Civil Action No. 25-1305 (RDM)
                                )
DONALD J. TRUMP, in his Official)
Capacity as President of the    )
United States of America, et al.,)
                                )
        Defendants.             )
_____ )
```

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Civil Rule 7(h), Defendants hereby submit this response to Plaintiffs' statement of material facts, ECF No. 35-1, at 4-11, and Defendants' statement of additional material facts.

### Response to Plaintiffs' Statement of Material Facts

1. The Corporation for Public Broadcasting ("CPB") is a private, District of Columbia nonprofit corporation, authorized to be created by Congress in the Public Broadcasting Act of 1967 (the "PBA"). *See* 47 U.S.C. § 396; Decl. of E. Slavitt at ¶ 1 (attached as Exhibit 1).

Defendants' Response:  Undisputed that the Corporation for Public Broadcasting is a District of Columbia nonprofit corporation, and that in the Public Broadcasting Act of 1967 ("PBA"), Congress provided that the CPB "is authorized to be established." 47 U.S.C. § 396(b). The statement that the CPB is "private" states a legal conclusion and is not a proper "statement of material facts." LCvR 7(h)(1).  Whether, or to what extent, the CPB is "private" or should be considered part of the federal government is a disputed legal question in this case.

2.      Since its creation, CPB has been the steward of Congressionally appropriated funds for public broadcasting and the largest single source of funding for public radio, television, and related online and mobile services.  *See* Decl. of E. Slavitt at ¶ 1.

Defendants' Response: Defendants dispute this paragraph as unsupported by competent evidence.  Plaintiffs cite the Declaration of Evan Slavitt, who as General Counsel "is responsible for all legal affairs concerning CPB," Decl. of Evan Slavitt ¶ 1, ECF No. 35-2 ("Slavitt SJ Decl."), but his declaration does not provide any support for this statement or any basis to believe that he has personal knowledge of this statement.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  For example, Mr. Slavitt, who "joined CPB in 2024," CPB, Evan Slavitt, Executive        Vice        President        and        General        Counsel, https://cpb.org/aboutcpb/leadership/executives/Evan-Slavitt-Executive-Vice-President-and-General-Counsel, provides no basis to assert that he has personal knowledge of CPB's activities "[s]ince its creation."  However, Defendants do not dispute that Congress has imposed restrictions and instructions on CPB for how CPB must use congressionally appropriated funds.  *See* 47 U.S.C. § 396(k).

3.      The PBA states that CPB is "not [] an agency or establishment of the United States Government."  47 U.S.C. § 396(b).

Defendants' Response: This paragraph sets forth legal conclusions and is not a proper "statement of material facts."  LCvR 7(h)(1).  Undisputed that this paragraph contains an altered quotation from a portion of a sentence of one provision of the PBA.  Defendants respectfully refer the Court to the statute in its entirety for a full and accurate statement of its contents.

4.      The PBA states that "[t]he members of the [CPB] Board shall not, by reason of such membership, be deemed to be officers or employees of the United States." *Id*. at § 396(d)(2).

<u>Defendants' Response</u>: This paragraph sets forth legal conclusions and is not a proper "statement of material facts." LCvR 7(h)(1). Undisputed that this paragraph contains an altered quotation from a portion of a sentence of one provision of the PBA. Defendants respectfully refer the Court to the statute in its entirety for a full and accurate statement of its contents.

5.      The PBA forbids "any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over educational television or radio broadcasting, or over [CPB] or any of its grantees or contractors…" *Id*. at § 398.

<u>Defendants' Response</u>: This paragraph sets forth legal conclusions and is not a proper "statement of material facts." LCvR 7(h)(1). Undisputed that this paragraph contains an altered quotation from a portion of a sentence of one provision of the PBA. Defendants respectfully refer the Court to the statute in its entirety for a full and accurate statement of its contents.

6.      Congress withheld from CPB any form, pure or quasi, of legislative, judicial, or regulatory power. *See* Decl. of E. Slavitt at ¶ 9.

<u>Defendants' Response</u>: This paragraph sets forth legal conclusions and is not a proper "statement of material facts." LCvR 7(h)(1). It is also vague and ambiguous, as it does not define terms such as "pure or quasi," "legislative," "judicial," or "regulatory." Powers that Congress conferred or withheld from CPB are stated in the PBA. Defendants respectfully refer the Court to that statute in its entirety for a full and accurate statement of its contents.

7.      In the course of its business, CPB has no ability to regulate any aspect of public media, resolve disputes among stations, dictate content of public media stations, or render any form of judgment over any other entity or organization. *Id*. at ¶ 13.

3

<u>Defendants' Response</u>: Disputed.    The CPB historically has received federal appropriations, including $535 million for fiscal year 2025. *See*, *e.g.*, Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 407, 136 Stat. 4459, 4901 (2022).  The CPB distributes much of those funds to public broadcasting stations through grants. *See* 47 U.S.C. § 396(k).  The CPB's authority to decide which public broadcasting stations receive grants, and the amount of such grants, gives the CPB inherent power to influence the conduct of public broadcasting stations.

8.    CPB does not, and cannot, infringe on or aid the executive branch's ability to carry out or implement the laws. *Id*.  For example, CPB:

- Has a board that is required to be divided by party, *id*;

- Is not subject to Freedom of Information Act requests, *id*;

- Is not designated as or referred to as a federal entity under any other statute, *id*;

- does not and cannot issue any regulations*, id*;

- Does not and cannot regulate or adjudicate disputes between public radio and television stations and members of the public, *id*;

- Is forward-funded for two years (that is, appropriations made, for example, in 2025 are for its 2027 fiscal year), *id*;

- Receives its funds directly from the Treasury and not through any governmental department or agency, *id*;

- Is not subject to the jurisdiction of any other governmental department or agency with regard to its directly appropriated funds, *id*;

- Is prohibited from making content or dictating content to any station, *id*;

- Is not required to attend frequent oversight hearings in front of Congress, aside from CPB's annual request for appropriations, *id*;

- Does not receive instructions for day-to-day operations from any political branch, *id*; and

- At no time in its 58-year existence has it had a member of any political branch, including the executive, sit on its board. *Id*. at ¶ 4.

<u>Defendants' Response</u>: Disputed.  This paragraph sets forth legal conclusions and is not a proper "statement of material facts."  LCvR 7(h)(1).  In addition, many of the statements in this paragraph are incorrect or misleading.  For example:

- The CPB has "infringe[d] on . . . the executive branch's ability to carry out or implement the laws" by continuing to recognize Diane Kaplan—and formerly, Laura Ross and Thomas Rothman—as purported Board members even after President Trump exercised his authority under the PBA to remove them as Board members, *see infra*, Defs.' Statement of Material Facts, ¶¶ 4-9, 11, 14-15 ("Defs.' SOMF");

- The CPB's board is not "required to be divided by party."  The PBA provides that "[n]o more than 5 members of the Board appointed by the President may be members of the same political party."  47 U.S.C. § 396(c)(1).  But the CPB board currently consists of two Republicans (Ruby Calvert and Liz Sembler), with seven vacancies, *see infra*, Defs.' SOMF ¶¶ 3-4, a configuration that complies with the PBA.

- The statement that the CPB "[i]s not subject to Freedom of Information Act requests" is incomplete and misleading.  Although the CPB here takes the position that it is not subject to FOIA, Plaintiffs do not cite any statute, case law, or other legal authority providing that the CPB is not subject to FOIA.

- The statement that the CPB "[i]s not designated as or referred to as a federal entity under any other statute" is inaccurate.  CPB is expressly termed a "designated Federal entity" in the Inspector General Act: "The term 'designated Federal entity' means . . . the Corporation for Public Broadcasting . . . ."  5 U.S.C. § 415(a)(1)(A).  Therefore, the CPB has an Inspector General and Office of the Inspector General, which "conduct independent audits, evaluations, and investigations" of the CPB and "report to Congress and the public about [their] activities."  Corporation for Public Broadcasting, Office of the Inspector General, https://cpboig.oversight.gov/what-we-do/overview (last visited Aug. 26, 2025).

- Although the CPB historically has been "forward-funded for two years," in 2025, Congress enacted legislation to rescind CPB's forward-funded appropriations for fiscal years 2026 and 2027.  *See* Rescissions Act of 2025, Pub. L. No. 119-28, § 2(20), 139 Stat. 467, 469-70 (2025).

- It is not clear what Plaintiffs mean in saying that the CPB "[r]eceives its funds directly from the Treasury and not through any governmental department or agency," as the Treasury is a governmental department.  To fund the CPB, Congress established "in the Treasury a fund which shall be known as the Public Broadcasting Fund . . . to be administered by the Secretary of the Treasury."  47 U.S.C. § 396(k)(1)(A).

- It is not accurate that the CPB "[i]s not subject to the jurisdiction of any other governmental department or agency with regard to its directly appropriated funds."  For example, the CPB expends some of its funds to hire employees.  Congress empowered

the Secretary of Health and Human Services to "enforce" a prohibition on employment discrimination at the CPB, including through "prescrib[ing] . . . rules and regulations" directly applicable to the CPB. *Id.* § 398(b)(2)(A). Relatedly, Congress required the CPB to "incorporate into each grant agreement or contract" with grant recipients a requirement that "the recipient will comply" with the Secretary's regulations. *Id.* § 398(b)(3)(A).

- The statement that the CPB "[i]s not required to attend frequent oversight hearings in front of Congress" is incomplete, because Congress has recently conducted oversight hearings concerning the CPB and how it deploys its funds. *See, e.g.*, Oversight and Investigations Subcommittee Hearing: "Examining Accusations of Ideological Bias at NPR, a Taxpayer Funded News Entity," House Committee on Energy & Commerce (May 8, 2024, 10:00 AM) https://energycommerce.house.gov/events/oversight-and-investigations-subcommittee-hearing-examining-accusations-of-ideological-bias-at-npr-a-taxpayer-funded-news-entity; Press Release, Hearing Wrap Up: DOGE Subcommittee Holds NPR and PBS Executives Accountable for Leftist Propaganda Funded by Taxpayer Dollars, Committee on Oversight and Government Reform (Mar. 26, 2025) https://oversight.house.gov/release/hearing-wrap-up-doge-subcommittee-holds-npr-and-pbs-executives-accountable-for-leftist-propaganda-funded-by-taxpayer-dollars/.

- With respect to the statement that the CPB "[d]oes not receive instructions for day-to-day operations from any political branch," the President recently issued an Executive Order regarding the CPB's usage of funds. *See* Executive Order 14,290, Ending Taxpayer Subsidization of Biased Media, 90 Fed. Reg. 19,415 (May 1, 2025). That Executive Order is the subject of separate litigation currently pending before this Court.

9.      The U.S. Government, including all departments and agencies, has no ownership interest in CPB, which operates from private offices leased from a private corporation located in downtown Washington, D.C., and does not share any space with any government agency. *Id.* at ¶¶ 6,11.

Defendants' Response: The extent to which the CPB itself qualifies for certain purposes as a government agency is a disputed legal question in this case. Also, although the CPB is a nonprofit corporation and no one has an "ownership interest" in the CPB, the U.S. Government "retains for itself permanent authority to appoint" all of the "directors of that corporation," *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995); 47 U.S.C. § 396(c)(1), "which

necessarily admits of some influence through the selection of directors." Mem. Op. & Order ("PI Order"), ECF No. 32, at 15.  Otherwise undisputed.

10.    The plain text of the PBA provides the President with the power to appoint directors of CPB with the advice and consent of the Senate.  47 U.S.C. § 396(c).

Defendants' Response: This paragraph sets forth legal conclusions and is not a proper "statement of material facts."  LCvR 7(h)(1).  However, Defendants do not dispute that the PBA provides that the members of the CPB's Board are "appointed by the President, by and with the advice and consent of the Senate."  47 U.S.C. § 396(c)(1).

11.    The plain text of the PBA provides only one way to remove directors: by failing to attend "less than 50 percent of all duly convened meetings of the Board in any calendar year[,]" a board member "shall forfeit membership and the President shall appoint a new member to fill such vacancy not later than 30 days after such vacancy is determined by the Chairman of the Board." 47 U.S.C. § 396(e)(7).

Defendants' Response: Disputed.  This paragraph sets forth legal conclusions and is not a proper "statement of material facts."  LCvR 7(h)(1).  As the Court has explained, 47 U.S.C. § 396(e)(7) "says nothing about 'removal'—and, instead, talks about 'forfeiture.'"  PI Order 19. "Because of the background presumption that the President may remove anyone he appoints, Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023).  By empowering the President to appoint CPB Board members without clearly restricting his removal authority, the PBA authorizes the President to remove Board members.

12.     There is no provision in the PBA stating that the Board members serve at the pleasure of the President, only that all of CPB's officers shall serve at the pleasure of the Board. *Id*. at § 396(e)(1).

Defendants' Response: Disputed.  This paragraph sets forth legal conclusions and is not a proper "statement of material facts."  LCvR 7(h)(1).  This paragraph characterizes the PBA. Defendants respectfully refer the Court to the statute in its entirety for a full and accurate statement of its contents.  Although the PBA does not contain the phrase "serve at the pleasure of the President," "[b]ecause of the background presumption that the President may remove anyone he appoints, Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino*, 71 F.4th at 1044.  By empowering the President to appoint CPB Board members without clearly restricting his removal authority, the PBA authorizes the President to remove Board members.

13.     In CPB's nearly 60-year history, neither CPB nor any member of CPB's Board has ever reported to, taken direction from, or been subject to the control of the Executive branch. *See* Decl. of E. Slavitt ¶ 10.

Defendants' Response: Disputed.  This paragraph is not supported by competent evidence. The only citation is to Mr. Slavitt's declaration, but the relevant statement in the cited paragraph of the declaration itself does not cite any support. *See* Slavitt SJ Decl. ¶ 10.  Nor is it apparent how Mr. Slavitt, who "joined CPB in 2024," CPB, Evan Slavitt, Executive Vice President and General Counsel, https://cpb.org/aboutcpb/leadership/executives/Evan-Slavitt-Executive-Vice-President-and-General-Counsel, would have any personal knowledge about CPB's history before 2024. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

8

that the affiant or declarant is competent to testify on the matters stated."). Moreover, the PBA expressly confers extensive regulatory authority on the CPB's hiring practices to the Secretary of Health and Human Services. *See* 47 U.S.C. § 398(b). In addition, this Court has recognized that "Congress did provide the President with appointment authority" over CPB board members, "which necessarily admits of some influence through the selection of directors." PI Order 15.

14. In related litigation pending in this District, the Federal Emergency Management Agency, through its Department of Justice attorneys, have acknowledged that CPB is a nongovernmental organization. *Corporation for Public Broadcasting v. FEMA*, No. 1:25-cv-00740, Dkt. No. 33-1 at ¶¶ 5-6 (D.D.C. June 24, 2025) ("Since being sworn in on January 25, 2025, the Secretary of Homeland Security ("Secretary") has issued several written and verbal directives regarding payments made by the Department, all of which were designed to ensure that any payments made by the Department are consistent with law and do not promote fraud, waste, or abuse. One such directive is a January 28, 2025 Direction on Grants to Non-governmental Organizations . . . . Pursuant to the Secretary's January 28, 2025 direction, FEMA paused funding for all of its grants programs on February 11, 2025 and began to institute a manual review process under its inherent authority to monitor awards; review its grant records and expenditures; and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient. This manual review applied to the NGWS program and required Plaintiff [CPB] to submit additional documentation for FEMA to review prior to FEMA releasing any funds.").

Defendants' Response: Undisputed that FEMA, through Department of Justice attorneys, made the filing cited in this paragraph. Otherwise disputed. This paragraph characterizes a filing

by the government in separate litigation. Defendants respectfully refer the Court to that filing for a full and accurate statement of its contents.

15.    The PBA states that it was enacted as a result of a Congressional finding that "a private corporation should be created to facilitate the development of public telecommunications and to afford maximum protection from extraneous interference and control." 47 U.S.C. § 396(a).

Defendants' Response: This paragraph sets forth legal conclusions and is not a proper "statement of material facts." LCvR 7(h)(1). Undisputed that this statement contains a quotation from a portion of a sentence of one provision of the PBA. Defendants respectfully refer the Court to the statute in its entirety for a full and accurate statement of its contents.

16.    The Senate Report accompanying the PBA stated:

> There is general agreement that for the time being, Federal financial assistance is required to provide the resources necessary for quality programs. It is also recognized that this assistance should in no way involve the Government in programming or program judgments. An independent entity supported by Federal funds is required to provide programs free of political pressures. The Corporation for Public Broadcasting, a nonprofit private corporation, authorized by title II of S. 1160 provides such an entity.

S.Rep.No.222, 90th Cong., 1st Sess. 4, 11 (1967).

Defendants' Response: Undisputed that a committee of the Senate issued the Senate Report cited in this paragraph. Defendants respectfully refer the Court to that report for a full and accurate statement of its contents.

17.    The House Report on the PBA stated:

> Every witness who discussed the operation of the Corporation agreed that funds for programs should not be provided directly by the Federal Government. It was generally agreed that a nonprofit Corporation, directed by a Board of Directors, none of whom will be Government employees, will provide the most effective insulation from Government control or influence over the expenditure of funds.

H.R.Rep.No.572, 90th Cong., 1st Sess. 15 (1967).

<u>Defendants' Response</u>: Undisputed that a committee of the House issued the House Report cited in this paragraph. Defendants respectfully refer the Court to that report for a full and accurate statement of its contents.

18.     Congress has, for the last forty-five years, consistently supported two-year advance appropriations to CPB. *See* Decl. of E. Slavitt at ¶ 13.

<u>Defendants' Response</u>: Disputed. In 2025, Congress rescinded its two-year advance appropriations to CPB for fiscal years 2026 and 2027. *See* Rescissions Act of 2025, Pub. L. No. 119-28, § 2(20), 139 Stat. 469-70.

19.     President Johnson, the chief officer of the Executive Branch, in his public remarks in signing the PBA on November 7, 1967, stated:

> This Corporation will assist stations and producers who aim for the best in broadcasting good music, in broadcasting exciting plays, and in broadcasting reports on the whole fascinating range of human activity. It will try to prove that what educates can also be exciting. It will get part of its support from our Government. But it will be carefully guarded from Government or from party control. It will be free, and it will be independent-and it will belong to all of our people.

President Lyndon B. Johnson, Remarks at the Signing of the Public Broadcasting Act of 1967 (Nov. 7, 1967).

<u>Defendants' Response</u>: Undisputed that this paragraph quotes a portion of the cited remarks. Defendants respectfully refer the Court to the full remarks for an accurate statement of their contents. *See* President Lyndon B. Johnson, Remarks at the Signing of the Public Broadcasting Act of 1967 (Nov. 7, 1967), https://www.presidency.ucsb.edu/documents/remarks-upon-signing-the-public-broadcasting-act-1967.

20.     The National Archives and Records Administration is an executive agency that publishes, and has published, the United States Government Manual for over 80 years in the Federal Register. *See* https://www.usgovernmentmanual.gov.

<u>Defendants' Response</u>: Undisputed, except that when the National Archives and Records Administration ("NARA") began publishing the United States Government Manual, it "was published initially as a loose-leaf notebook" rather than in the Federal Register. https://www.usgovernmentmanual.gov/.

21.    According to the United States Government Manual, it is the "official handbook" of the Federal Government and provides information on the agencies of the legislative, judicial, and executive branches.  *See* https://www.usgovernmentmanual.gov.

<u>Defendants' Response</u>: Disputed in that this paragraph's description of how NARA characterizes the United States Government Manual is misleading and incomplete.  As NARA makes clear, the Manual's contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations," and the editors then "review and edit the submissions." https://usgovernmentmanual.gov/About.  Therefore, whether an entity is included in the Manual depends on whether the entity chose to make a submission.  Otherwise undisputed.

22.    The Manual also includes information on quasi-official agencies; international organizations in which the United States participates; and boards, commissions, and committees. *See id*.

<u>Defendants' Response</u>: Disputed in that this paragraph's description of how NARA characterizes the United States Government Manual is misleading and incomplete.  As NARA makes clear, the Manual's contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations," and the editors then "review and edit the submissions." https://usgovernmentmanual.gov/About.  Therefore, whether an entity is included in the Manual depends on whether the entity chose to make a submission.  Otherwise undisputed.

23.     The United States Government Manual does not mention the CPB anywhere among its listing of governmental and quasi-governmental agencies covering over 2,000 pages.  *See id.*

Defendants' Response: Undisputed that the United States Government Manual does not mention the CPB.  However, as NARA makes clear, the Manual's contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations," and the editors then "review and edit the submissions."  https://usgovernmentmanual.gov/About.  CPB's omission therefore reflects that the CPB did not submit any information for inclusion in the U.S. Government Manual.

24.     Other federal statutes defining "executive departments," "government corporation," and "executive agency," do not identify CPB or expressly apply to the CPB.  *See* 5 U.S.C. §101 (setting forth those entities qualifying as executive departments, not including CPB); 5 U.S.C. § 103 (defining "government corporation" as a "corporation owned or controlled by the Government of the United States"); 5 U.S.C. § 105 (defining "executive agency" as "an executive department, a Government corporation").

Defendants' Response: Disputed.  This paragraph sets forth legal conclusions and is not a proper "statement of material facts."  LCvR 7(h)(1).  Moreover, the Inspector General Act expressly lists the CPB as a "designated Federal entity."  5 U.S.C. § 415(a)(1)(A).

25.     Early in the morning of April 28, 2025, Trent Morse, on behalf of President Donald J. Trump, sent three separate emails ("the "Correspondence") to Plaintiffs Thomas Rothman, Laura Ross, and Diane Kaplan, purporting to terminate them from their positions as members of CPB's Board of Directors.  *See* Decl. of E. Slavitt at ¶ 19-20.

<u>Defendants' Response</u>: Undisputed.  Screenshots of the cited correspondence are contained in Mr. Slavitt's Declaration.  *See* Slavitt SJ Decl. ¶ 23.  Defendants respectfully refer the Court to the cited correspondence for a full and accurate statement of its contents.

26.    The Correspondence stated, in full:

On behalf of President Donald J. Trump, I am writing to inform you that your position on the Corporation for Public Broadcasting is terminated effective immediately.

Thank you for your service.

<u>Defendants' Response</u>: Undisputed, except that this paragraph quotes only part of the cited correspondence.  Screenshots of the cited correspondence are contained in Mr. Slavitt's Declaration.  *See* Slavitt SJ Decl. ¶ 23.  Defendants respectfully refer the Court to the cited correspondence for a full and accurate statement of its contents.

27.    The Correspondence did not identify the authority with which the President was purporting to terminate the Board members.  *Id*. at ¶ 21.

<u>Defendants' Response</u>: Undisputed that Mr. Morse sent the correspondence cited in this paragraph.  Screenshots of the cited correspondence are contained in Mr. Slavitt's Declaration. *See* Slavitt SJ Decl. ¶ 23.  Defendants respectfully refer the Court to the cited correspondence for a full and accurate statement of its contents.

28.    CPB's Board of Directors is a five-person board.  *Id*. at ¶ 24.

<u>Defendants' Response</u>: Disputed.  The PBA provides that when fully staffed, the Board "consist[s] of 9 members." 47 U.S.C. § 396(c)(1).  Currently, there are two members on the Board, Ruby Calvert and Liz Sembler.  CPB also purports to recognize Diane Kaplan as a Board member, *see* CPB, Board of Directors, https://cpb.org/aboutcpb/leadership/board, but because she has been removed by the President, *see supra*, ¶¶ 25-26, she is unlawfully usurping her position.

29.     The District of Columbia Nonprofit Corporation Act requires a nonprofit corporation organized under the laws of the District of Columbia to have and maintain at least three directors. D.C. Code § 29-406.03.

Defendants' Response: This statement sets forth legal conclusions and is not a proper "statement of material facts." LCvR 7(h)(1). Defendants respectfully refer the Court to the District of Columbia Nonprofit Corporation Act in its entirety for a full and accurate statement of its contents.

30.     The purported termination would deprive CPB of a quorum for any board meeting or resolution. *See* Decl. of E. Slavitt at ¶ 24.

Defendants' Response: This statement sets forth legal conclusions and is not a proper "statement of material facts." LCvR 7(h)(1).

31.     On April 29, 2025, one day after the President's purported termination of three members of CPB's Board, DOGE officials sent an email to the two remaining CPB Board members. *Id*. at ¶ 25.

Defendants' Response: Undisputed. Defendants respectfully refer the Court to the cited email for a full and accurate statement of its contents. *See* Slavitt SJ Decl. ¶ 25.

32.     The two Board members who were not the subject of the Correspondence received an email at 3:02 p.m. purportedly from Nate Cavanaugh, a "member of the DOGE team working at the General Services Administration." *Id*.

Defendants' Response: Undisputed. Defendants respectfully refer the Court to the cited email for a full and accurate statement of its contents. *See* Slavitt SJ Decl. ¶ 25.

33.     In the email, Mr. Cavanaugh stated:

My name is Nate Cavanaugh – I'm a member of the DOGE team working at the General Services Administration.

15

Are you available for a meeting tomorrow or on Thursday?  I would like to learn more about the Corporation for Public Broadcasting and discuss getting a DOGE team assigned to the organization.

Best,

Nate

*Id.*

Defendants' Response: Undisputed.  Defendants respectfully refer the Court to the cited email for a full and accurate statement of its contents.  *See* Slavitt SJ Decl. ¶ 25.

34.    At no time has the General Services Administration ever been involved in the operation, oversight, or control of CPB.  *Id*. at ¶ 26.

Defendants' Response: Disputed.  This paragraph is not supported by competent evidence. The only citation is to Mr. Slavitt's declaration, but the relevant statement in the cited paragraph of the declaration itself does not cite any support.  *See* Slavitt SJ Decl. ¶ 26.  Nor is it apparent how Mr. Slavitt, who "joined CPB in 2024," CPB, Evan Slavitt, Executive Vice President and General Counsel, https://cpb.org/aboutcpb/leadership/executives/Evan-Slavitt-Executive-Vice-President-and-General-Counsel, would have any personal knowledge about CPB's history before 2024.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

**Defendants' Statement of Additional Material Facts About Which There Is No Genuine Dispute**

1.    CPB's current Articles of Incorporation (which were also current as of April 28, 2025) were filed on March 27, 1968.  They are contained in Exhibit A to the Supplemental Declaration of Evan Slavitt ("Suppl. Slavitt Decl.").  *See* Suppl. Slavitt Decl. ¶ 3, ECF No. 12-1; *id*. Ex. A, at 17-43.

2.      The Bylaws of the CPB that were current as of April 28, 2025 were amended on September 13, 2021.  They appear beginning at page 45 of ECF No. 12-1, and they are also displayed on CPB's website.  *See* Suppl. Slavitt Decl., Ex. A, at 45-58, *CPB v. Trump*;  By-Laws of the Corporation for Public Broadcasting, As amended Sept. 13, 2021, https://cpb.org/sites/default/files/CPB%20By-Laws%20as%20amended%20September%2013%2C%202021.pdf.

3.      At the beginning of the day on April 28, 2025, the CPB had five Board members serving: former Plaintiff Laura G. Ross, former Plaintiff Thomas E. Rothman, Plaintiff Diane Kaplan, Ruby Calvert, and Liz Sembler.  *See* Pls.' Mot. for TRO at 22, ECF No. 2 (acknowledging that removal of Defendants Kaplan, Ms. Ross, and Mr. Rothman would "leave CPB with only two board members"); Board of Directors, https://cpb.org/aboutcpb/leadership/board.

4.      On April 28, 2025, Trent Morse, Deputy Director of Presidential Personnel for the Executive Office of the President, sent email messages on behalf of President Trump to Ms. Ross, Ms. Kaplan, and Mr. Rothman, communicating that President Trump was removing them from their positions at the CPB effective immediately.  *See* Slavitt SJ Decl. ¶ 23.

5.      On May 2, 2025, the CPB held a Board meeting.  Plaintiff Kaplan participated in that meeting and voted on matters coming before the Board.  *See* CPB, Board of Directors, Meetings, May 2, 2025, https://perma.cc/S6HG-8K3Z.

6.      On May 13, 2025, the CPB held a Board meeting.  Plaintiff Kaplan, Ms. Ross, and Mr. Rothman participated in the meeting and voted on matters coming before the Board.  *See* CPB, Board of Directors, Meetings, May 13, 2025, https://perma.cc/7KK6-3E5S.

7.      On May 15, 2025, the CPB held a Board meeting.  At that meeting, the CPB Board purported to adopt a resolution amending the by-laws of the CPB.  The CPB's record of that

resolution indicates that the resolution was purportedly adopted with four votes in favor, and one absent. *See* CPB, Board of Directors, Meetings, May 15, 2025, https://perma.cc/7FUW-7YPL. Thus, at least two of the removed Board members participated in that meeting and voted to adopt the resolution.

8.      On June 8, 2025, the same day the Court denied the Motion for Preliminary Injunction in this case, CPB issued a press release stating that "the three individuals whom the President purported to remove, Laura G. Ross, Thomas E. Rothman, and Diane Kaplan, are, remain, and shall continue to be directors of the Board of the Corporation for Public Broadcasting." CPB, Press Release, Court Recognizes CPB's Independence; Board Members Remain (June 8, 2025), https://perma.cc/ZJ6N-VVZV.

9.      On June 10 and June 11, 2025, the CPB held a Board meeting. Plaintiff Kaplan, Ms. Ross, and Mr. Rothman participated in the meeting and voted on matters coming before the Board. *See* CPB, Board of Directors, Meetings, June 10–11, 2025, https://perma.cc/6X9S-QQ7K.

10.      On July 22, 2025, Ms. Ross sent a letter to CPB Chief Executive Officer Patricia Harrison, stating, in part, that "I no longer hold or exercise the position of Director of the Corporation for Public Broadcasting." United States' Rule 41(a)(1)(A) Notice of Voluntary Dismissal of Claims Against Defendant Laura G. Ross, Ex. A, *United States v. Kaplan*, 1:25-cv-02261-RDM (D.D.C.), ECF No. 6-1.

11.      On July 24, 2025, the CPB held a Board meeting. Mr. Rothman and Plaintiff Kaplan participated in the meeting and spoke after Ms. Calvert asked if "other directors" wished to make statements. Plaintiff Kaplan voted on matters coming before the Board. *See* CPB, Board of Directors, Meetings, July 24, 2025, https://cpb.org/aboutcpb/leadership/board/meetings/2025-07-24/Board-Meeting.

12.     In her statement at the July 24, 2025, Board meeting, Plaintiff Kaplan stated that she was "serving in a public service role on a board where we were nominated by the President of the United States, confirmed unanimously by the Senate of the United States." *Id.*

13.     On July 31, 2025, Mr. Rothman sent a letter to CPB Chief Executive Officer Patricia Harrison, stating that "I no longer hold or exercise the position of Director of the Corporation for Public Broadcasting." United States' Rule 41(a)(1)(A) Notice of Voluntary Dismissal of Claims Against Defendant Thomas E. Rothman, Ex. A, *United States v. Kaplan*, 1:25-cv-02261-RDM (D.D.C.), ECF No. 8-1.

14.     As of July 15, 2025, the CPB's website listed Plaintiff Kaplan, Ms. Ross, and Mr. Rothman as members of the Board of Directors, along with Ms. Calvert and Ms. Sembler. *See* CPB, Board of Directors, https://perma.cc/YL9Y-ZKT7 (captured July 15, 2025).

15.     The CPB has since removed Ms. Ross and Mr. Rothman from the website's list of current members of the Board of Directors and added them to a list of "Former CPB Board Members." However, the website continues to list Plaintiff Kaplan as a Board member. *See* CPB, Board of Directors, https://cpb.org/aboutcpb/leadership/board.

Dated:  August 29, 2025                    Respectfully Submitted,


                                           BRETT A. SHUMATE
                                           Assistant Attorney General
                                           Civil Division

                                           CHRISTOPHER R. HALL
                                           Assistant Director, Federal Programs Branch

                                           */s/ Jeremy S.B. Newman*
                                           JEREMY S.B. NEWMAN
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, N.W.
                                           Washington, DC 20005
                                           Tel: (202) 532-3114
                                           Fax: (202) 616-8470
                                           Email: jeremy.s.newman@usdoj.gov

                                           *Attorneys for Defendants*

20