# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE CORPORATION FOR PUBLIC BROADCASTING, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01305 |
| | ) | |
| DONALD J. TRUMP, in his Official Capacity as President of the United States of America, *et al.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.     THE PRESIDENT DOES NOT POSSESS PLENARY REMOVAL POWER OVER
       APPOINTEES WHO DO NOT WIELD EXECUTIVE POWER .................................. 3

II.    *LEBRON* DOES NOT APPLY HERE ........................................................................ 9

       A.    The CPB Is Not Like Amtrak ............................................................................ 9

       B.    CPB Is Not Subject To Governmental Control ................................................11

       C.    Lebron and Department of Transportation Are Legally Distinguishable ...................... 12

       D.    The CPB Does Not Wield Executive Power ..................................................... 13

III.   THE PRESIDENT HAS NO STATUTORY AUTHORITY TO REMOVE CPB'S
       DIRECTORS UNDER DISTRICT OF COLUMBIA LAW ........................................ 16

       A.    D.C. Code § 29-406.08(e) Postdates the Broadcasting Act and Does Not Permit
             Removal Here ............................................................................................... 17

       B.    Any Application of D.C. Code § 29-406.08(e) That Would Allow the President to
             Unilaterally Remove CPB Board Members at Will Would Be Fundamentally
             Inconsistent With the Broadcasting Act ........................................................ 22

       C.    Both the President and the Senate Were Required To Remove a Director.................... 26

IV.    DEFENDANTS' OTHER ARGUMENTS ARE UNAVAILING ................................. 29

       A.    Plaintiffs' Declaratory Judgment Action Is Appropriate ................................. 29

       B.    Plaintiffs' Claim Based on Separation of Powers and *Ultra Vires* Action is Valid ........ 30

       C.    Plaintiffs' Constitutional Claims in Count IV are Valid .................................. 32

CONCLUSION .............................................................................................................. 33

i

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937)..............................................................................................30

*Alexander v. Sandoval*,
532 U.S. 275 (2001)..............................................................................................20

*Almond Bros. Lumber Co. v. U.S.*,
34 C.I.T. 370 (2010) .............................................................................................23

*Blum v. Yaretsky*,
457 U.S. 991 (1982)..............................................................................................12

*Boatmen's First Nat'l Bank v. Southern Mo. Dist. Council of The Assemblies of God*,
806 S.W.2d 706 (Mo. Ct. App. 1991).................................................................27

*Bowsher v. Synar*,
478 U.S. 714 (1986).........................................................................................13, 14

*Brown v. United States*,
602 U.S. 101 (2024)...........................................................................................2, 18

*Buckley v. Valeo*,
424 U.S. 1 (1976)...................................................................................................14

*Carroll v. Trump*,
49 F.4th 759 (2d Cir. 2022) ................................................................................8, 23

*Carroll v. Trump*,
No. 20-cv-03978 (2d Cir. Nov 25, 2020),.............................................................23

*Carroll v. Trump*,
Case 1:20-cv-07311-LAK, (S.D.N.Y. Oct. 19, 2020) ...........................................23

*Collins v. Yellen*,
594 U.S. 220 (2021)..................................................................................................8

*Comm. on Oversight & Gov't Reform v. Holder*,
979 F. Supp. 2d 1 (D.D.C. 2013) .....................................................................29, 30

*Corporation for Public Broadcasting v. FEMA*,
No. 1:25-cv-00740, Dkt. No. 33-1 (D. D.C. June 24, 2025) ................................11

*Dalton v. Specter*,
    511 U.S. 462 (1994)........................................................................................32

*Dellinger v. Bessent*,
    2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ..................................................24

*Dep't of Transp. v. Ass'n of Am. Railroads*,
    575 U.S. 43 (2015).........................................................................2, 9, 12, 13

*Edmond v. United States*,
    520 U.S. 651 (1997)........................................................................................24

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*,
    463 U.S. 1 (1983).....................................................................................29, 30

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)..........................................................................................8

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)........................................................................................24

*Glob. Health Council v. Trump*,
    No. 25-5097, --- F.4th ---, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025).............32

*Harris v. Bessent*,
    No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025).........................5

*Hassett v. Welch*,
    303 U.S. 303 (1938).........................................................................2, 16, 18

*Herron v. Fannie Mae*,
    861 F.3d 160 (D.C. Cir. 2017) .......................................................................11

*Humphrey's Executor v. United States*
    295 U.S. 602 (1935) ....................................................................................4, 5

*I.N.S. v. Chadha*,
    462 U.S. 919 (1983)..................................................................................14, 31

*In re Hennen*,
    38 U.S. 230 (1839)............................................................................................5

*Jam v. International Fin. Corp.*,
    586 U.S. 199 (2019)..................................................................................16, 19

*Kennedy v. Braidwood Mgmt., Inc.*,
  606 U.S. ---, 145 S.Ct. 2427 (June 27, 2025) ...................................................7, 24

*Lebron v. National R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ........................................................................... *passim*

*Leopold v. Manger*,
  102 F.4th 491 (D.C. Cir. 2024) ...........................................................................18

*Manhattan Community Access Corp. v. Halleck*,
  587 U.S. 802 (2019) ...........................................................................................15

*Medellin v. Texas*,
  552 U.S. 491, 128 S.Ct. 1346 (2008) ..................................................................31

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
  571 U.S. 191, 134 S.Ct. 843 (2014) ..............................................................29, 30

*Mistretta v. United States*,
  488 U.S. 361 (1989) .....................................................................................14, 15

*Morrison v. Olson*
  487 U.S. 654 (1988) .............................................................................................5

*Motions Sys. Corp. v. Bush*,
  437 F.3d 1356 (Fed. Cir. 2006) ..........................................................................23

*Myers v. United States*,
  272 U.S. 52 (1926) .........................................................................................4, 5

*N.L.R.B. v. Enter. Leasing Co. Se., LLC*,
  722 F.3d 609 (4th Cir. 2013) ........................................................................17, 28

*Nat'l Treasury Employees Union v. Nixon*,
  492 F.2d 587 (D.C. Cir. 1974) ...........................................................................23

*Nat'l Wildlife Fed. v. United States*,
  626 F.2d 917 (D.C. Cir. 1980) .......................................................................8, 23

*Nixon v. Administrator of General Services*,
  433 U.S. 425 (1977) ...........................................................................................15

*Operation Rescue Nat. v. U.S.*,
  147 F.3d 68 (1st Cir. 1998) .................................................................................23

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
  839 F.3d 1 (D.C. Cir. 2016) ................................................................................7

*Pub. Citizen, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  332 F.3d 654 (D.C. Cir. 2003) ..........................................................................21

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*,
  483 U.S. 522 (1987)....................................................................................12, 15

*Schlafly v. Eagle Forum,*
  970 F.3d 924 (8th Cir. 2020) ............................................................................27

*Seila Law LLC v. Consumer Fin. Protection Bur.*,
  591 U.S. 197 (2020)......................................................................................4, 24

*Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023)....................................................................6, 8, 9

*Sharp Corp. v. Hisense USA Corp.*,
  292 F. Supp. 3d 157 (D.D.C. 2017), *dismissed*,
  No. 17-7158, 2017 WL 9401061 (D.C. Cir. Dec. 26, 2017) ...........................29, 30

*Shoshone-Bannock Tribes of Fort Hall Rsrv. v. U.S. Dep't of the Interior*,
  2025 WL 2424422 (9th Cir. Aug. 22, 2025)......................................................18

*Simonds v. Hassett*, 58 F. Supp.
  911 (D. Mass. 1945)..........................................................................................28

*Trump v. United States*,
  603 U.S. 593, 144 S. Ct. 2312 (2024)................................................................31

*United States Ass'n of Reptile Keepers, Inc. v. Jewell*,
  103 F. Supp. 3d 133 (D.D.C. 2015), *aff'd sub nom. United States Ass'n of Reptile*
  *Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir. 2017) .......................................21

*United States v. Kaplan*,
  No. 25-cv-2261 (D.D.C.) ...................................................................................1

*United States v. Ramsey*,
  2022 WL 596378 (E.D. Pa. Feb. 28, 2022) .........................................................18

*United States v. Ross, et al.*,
  No. 1:25-cv-2261 (D.D.C. July 15, 2025))..........................................................30

*Wiener v. United States*,
  357 U.S. 349 (1958)...........................................................................................5

*Wingert v. Scenic Heights Subdivision Property Owners Association, Inc.*,
   2008 WL 2778017 (Tex. App. July 16, 2008) ........................................................27

*Youngstown Sheet & Tube Co. v. Sawyer*,
   103 F. Supp. 569 (D.D.C), *aff'd*, 343 U.S. 579, 72 S. Ct. 863 (1952)....................30

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 597 (1952)...........................................................................................4, 32

## FEDERAL STATUTES

12 U.S.C. § 4617(a)(2)...............................................................................................11

21 U.S.C. § 802.......................................................................................................2, 18

28 U.S.C. § 1361.........................................................................................................23

47 U.S.C. § 396 ................................................................................................. *passim*

47 U.S.C. § 398 ................................................................................................. *passim*

Pub. Law 87-569 76 Stat. (Aug. 6, 1962) ..................................................................21

Pub. Law 93-198 87 Stat. (Dec. 24, 1973) ................................................................20

Pub. Law No. 115 141 132 Stat. 348 (March 23, 2018) ............................................21

Pub. Law No. 132 Stat. 757 (Mar. 23, 2018)..............................................................20

U.S. Const. Article I §§ 1, 2........................................................................................31

## STATE STATUTES

D.C. Code § 29-406.08(e).................................................................................. *passim*

D.C. Code § 16-3501 ..................................................................................................30

## OTHER AUTHORITIES

*Black's Law Dictionary* 1602 (6th ed. 1991) ............................................................27

S.Rep. No. 222, 90th Cong., 1st Sess. 4, 11 (1967)...................................................22

## INTRODUCTION[1]

Whether this Court resolves the matter under Article II or D.C. nonprofit corporations law, the result is the same: the President is not authorized to remove at his whim Board members of the Corporation for Public Broadcasting ("CPB")—a private, independent corporation that Congress took measures to insulate from government control.

In asserting that the President has authority under Article II of the U.S. Constitution to unilaterally remove CPB's directors, Defendants insist that the President has plenary removal power over ***any*** presidential appointee. But that argument conflicts with a wealth of contrary authority, including:

- Supreme Court precedent characterizing the President's removal powers as limited to executive branch officers—those who wield executive power;

- Congress' clear statutory language in the Public Broadcasting Act of 1967 (the "Broadcasting Act") authorizing the creation of CPB to be an independent, non-profit organization, free from government interference;

- Congress' clear statutory mandate that CPB's Board members are not "officers or employees of the United States," 47 U.S.C. § 396(d)(2);

- Congress' clear non-interference provisions, providing that no "department, agency, officer, or employee of the United States" shall exercise "any direction, supervision, or control over … the Corporation." *Id.* at § 398(a);

- controlling case law, and then-former President Trump's own admission that the President is an officer and employee of the United States; and

- Supreme Court precedent acknowledging that the ability to remove an officer or employee is the quintessential form of "control."

---

[1] Plaintiff Diane Kaplan, who is separately represented, is an individual plaintiff in this case and the sole defendant in the related case *United States v. Kaplan*, Case No. 1:25-cv-2261 (RDM). For purposes of both cases, Ms. Kaplan maintains that she was never removed from her position as a CPB Board member and continues to serve in that role, but she reserves all rights with respect to her alternative argument that she is serving as a member of a contingent designated body. Ms. Kaplan joins this brief as to Sections I-II, III.B-C, and IV, and she is not relying on arguments relating to the applicability of the 1962 D.C. Nonprofit Corporation Act. *See* ECF 35-1 at 33-34.

Defendants' argument that CPB is part of the government in reliance on *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995), and *Dep't of Transp. v. Ass'n of Am. Railroads,* 575 U.S. 43 (2015), is also misplaced. These cases are factually and legally distinguishable and do not support the President's exercise of removal authority over the CPB Board members.

Contrary to Defendants' arguments, neither the Broadcasting Act nor the D.C. Nonprofit Corporations Act gives the President the ability to unilaterally remove CPB's directors. The Defendants' argument is meritless for three reasons.

First, the 1967 Broadcasting Act incorporated by reference the 1962 D.C. Nonprofit Corporations Act, not D.C. Code § 29-406.08(e), enacted some 50 years later. Under the principle of statutory construction known as the "reference canon," D.C. Code § 29-406.08(e) has no applicability "because, where one statute adopts the particular provisions of another statute by name or citation, the legal effect is to adopt the statute ***only as it exists at the time and without regard to any future amendments***." *See Brown v. United States*, 602 U.S. 101,  116 (2024) ( "reference to another statute by specific title or section number—such as ACCA's reference to 21 U.S.C. § 802—in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, *without any subsequent amendments*") (citations and quotations omitted); *Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute.").

Second, the Broadcasting Act, by its express terms, only allows resort to the D.C. Nonprofit Corporation Act "to the extent consistent with" the Broadcasting Act. Any application of D.C. Code § 29-406.08(e) that would allow the President unilaterally to remove CPB's Board members at will would fundamentally conflict with the Broadcasting Act's numerous, broad non-interference provisions prohibiting any "department, agency, officer, or employee of the

United States" from exercising any "direction, supervision, or control over… the Corporation" and its legislative intent to create an independent, privately managed non-profit corporation.  *Id*. at § 398(a).

Third, even if D.C. Code § 29-406.08(e) could be read into the Broadcasting Act, it still would not allow the President to unilaterally remove any CPB director.  This is because under its express terms, § 29-406.08(e) provides that a director who is appointed by a multi-party process can only be removed by the same multi-party process that appointed her.  Here, it is undisputed that the President may not unilaterally place any directors onto the Board of CPB.  Rather, under the clear terms of the Broadcasting Act, he must ***jointly*** act "by and with" the advice and consent of the Senate, rendering it a joint two-party appointment process, thereby requiring the same joint, two-party removal process under D.C. Code § 29-406.08(e).  *See* 47 U.S.C. § 396(c)(1).

As a result, President Trump had no authority under the inapplicable provisions of D.C. Code § 29-406.08(e) to unilaterally remove CPB's directors.  As a result, summary judgment must enter in favor of Plaintiffs, and the Defendants' cross-motion for summary judgment must be denied.

## **ARGUMENT**

### I.    THE PRESIDENT DOES NOT POSSESS PLENARY REMOVAL POWER OVER APPOINTEES WHO DO NOT WIELD EXECUTIVE POWER

Whatever removal authority the President may have over the officers and employees who exercise executive authority, that authority does not extend to presidential appointees who do *not* wield executive power—particularly where, as here, Congress has expressly shielded such appointees from control.  Defendants argue that the President's removal power is inherently and without limitation incidental to his power to appoint.  *See* Opp'n at 10. If that were true, the President would have unfettered authority to remove a host of presidential appointees who do not

wield executive power (including Article III judges).  But the President's removal power does not sweep so broadly.  Rather, whatever removal power he possesses is limited to **executive branch** officers—those officers who wield the President's power.  *Seila Law LLC v. Consumer Fin. Protection Bur.*, 591 U.S. 197, 213-214 (2020) ("These lesser officers must remain accountable to the President, whose authority they wield.") (citations omitted).  Because CPB is not an executive agency, but instead is a private corporation that Congress took steps to insulate from government control, it does not wield any of the President's executive power, and the President accordingly has no removal authority over it. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 597, 637-38 (1952) ("[W]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb.").

Over the course of decades, the Supreme Court has consistently characterized the President's removal authority as extending only to *executive officers*.  In *Humphrey's Executor v. United States,* when discussing the power to terminate the purely judicial members of the Court of Claims, the Court explained:  "We think it plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers of the character of those just named."  295 U.S. 602, 629 (1935).

In *Myers v. United States*, 272 U.S. 52 (1926), the Court limited its ruling to executive officers, stating: "the power of appointment to **executive office** carries with it, as a necessary incident, the power of removal."  *Myers*, 272 U.S. at 126 (emphasis added).  The Supreme Court later underscored the limitation of its ruling in *Myers*:

> The actual decision in the *Myers* Case finds support in the theory that [an executive officer] is merely one of the units in the executive department and, hence, inherently subject to the exclusive and illimitable power of removal by the Chief Executive, whose subordinate and aid he is.… [T]he necessary reach of the decision goes far enough to include all purely executive officers. It goes no farther; **much less does it include an officer who occupies no place in the executive department and who**

> *exercises no part of the executive power vested by the Constitution in the*
> *President.*

*Humphrey's Ex'r*, 295 U.S. at 627–28 (emphasis added).  This was not the only occasion on which the Supreme Court recognized the limitation on the Presidential removal power to **executive offices**:

> The assumption was short-lived that the *Myers* case recognized the President's inherent constitutional power to remove officials, no matter what the relation of the executive to the discharge of their duties and no matter what restrictions Congress may have imposed regarding the nature of their tenure.

*Wiener v. United States,* 357 U.S. 349, 352 (1958) (citations omitted).

Even that power to remove executive officers is not without limit.  *Humphrey's Executor* validated limitations on the President's ability to terminate members of the Federal Trade Commission.  295 U.S. at 630-32.  As the D.C. Circuit has recently expressed, "the Supreme Court has repeatedly stated that it was not overturning the precedent established in *Humphrey's Executor* and *Wiener* for multimember adjudicatory bodies. Instead, the Supreme Court has, in its own words, left that precedent 'in place[.]'"  *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *1 (D.C. Cir. Apr. 7, 2025).  The Supreme Court's holding in *Morrison v. Olson* also restricts the President's ability to remove executive officers: "[c]ontrary to the implication of some dicta in *Myers,* the President's power to remove Government officials simply was not all-inclusive in respect of civil officers with the exception of the judiciary provided for by the Constitution."  487 U.S. 654, 687 (1988) (citations and quotations omitted).

In support of their incidental power argument, Defendants bypass the plain text of the Broadcasting Act, instead invoking cases which do not support their broad construction.  For instance, *In re Hennen*, 38 U.S. 230, 259 (1839), is a case in which the Court found that an Article III judge was allowed to terminate a clerk in his court.  Of course, a case dealing with a district

5

judge's power to terminate a clerk acting under judicial supervision provides no authority for the proposition that the President has unfettered authority to terminate any appointee, regardless of whether they exercise executive power or are in the executive branch.

Similarly, Defendants' repeated invocation of *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) serves them no better. In *Severino*, the D.C. Circuit did not rule "that the President may remove anyone he appoints." *See* Opp'n at 10. Rather, it ruled that "the President generally must be able to control those who execute the laws on ***his*** behalf" and "discharg[e] ***his own*** responsibilities" because "Presidential control … requires the ability to remove ***executive officials***." *Severino*, 71 F.4th at 1044 (emphasis added). Notably, *Severino* involved the Administrative Conference of the United States, an entity specifically within the executive branch whose purpose was "***purely executive***" and which consisted of representatives from each executive department.[2] *Id.* at 1040 (emphasis added).

In addition to the fact that CPB is outside the executive branch, Congress expressly prohibited the kind of executive branch interference with CPB that is inherent to a threat of presidential removal. As the D.C. Circuit explained in *Severino*, "the Supreme Court has recognized … ***two ways*** Congress can send such a clear signal. First, Congress may impose a removal restriction in the plain text of a statute. Second, Congress may clearly indicate its intent to restrict removals ***through the statutory structure and function of an office***." *Severino*, 71 F.4th at 1044 (internal citations and quotations omitted) (emphasis added). But here, in authorizing CPB, Congress did so in both ways – explicit and "structur[al]."

---

[2] The person whose employment was terminated was the Director of the Office of Civil Rights in the Department of Health and Human Services, an executive office.

Allowing CPB's Board members to be removed at the whim of the President would conflict with the text and purpose of the Broadcasting Act.  In the plain text of the statute, Congress stated that: "Nothing … shall be deemed … to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over … the Corporation."  47 U.S.C. § 398(a).  And Congress further stated, clear as day, that "[t]he members of the Board shall not, by reason of such membership, be deemed to be officers or employees of the United States." *Id*. at § 396(d)(2).  Defendants handwave this unambiguous statutory language away, claiming that it "does not mention removal of Board members."  *See* Opp'n at 13.  But clearer language can hardly be imagined than saying that "nothing . . . shall be deemed . . . to authorize" anyone in the federal government from interfering with the CPB's operations: for if CPB's Board members were considered to be officers of the United States, despite Congress' directive to the contrary, "[a]n officer's presumed desire to avoid removal generally creates a here-and-now subservience." *Kennedy v. Braidwood Mgmt., Inc.¸* 606 U.S. ---, 145 S.Ct. 2427, 2443 (June 27, 2025) (cleaned up).  Placing CPB's Board members at the whim of Presidential removal power conflicts squarely with the Broadcasting Act's statutory language.  *Id.* at *9 ("The prerogative of at-will removal of a subordinate, then, often carries with it the power to ***supervise and direct*** that subordinate.") (emphasis added).

The plain language of the Broadcasting Act means precisely what it says:  that "nothing" shall authorize the federal government from exercising control over the CPB.  "Nothing means nothing." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 41 (D.C. Cir. 2016). And Congress clearly intended this provision to encompass the President; otherwise, its essential purpose of precluding executive branch interference would be gutted.  As this Circuit and others have held in construing other federal statutes, the words "officer" and "employee" may be

understood to encompass the President.  *See, e.g., Nat'l Wildlife Fed. v. United States*, 626 F.2d 917, 623-624 (D.C. Cir. 1980) (holding that the statutory reference to "officer or employee" in mandamus statute encompassed the President); *Carroll v. Trump*, 49 F.4th 759, 763, 770 (2d Cir. 2022) (holding that the President "fits comfortably" within the statutory reference to "officer" or "employee" of the United States under the Federal Employees Liability Reform and Tort Compensation Act of 1988).  Indeed, Defendants acknowledge this point in their opposition.  *See* Opp'n at 13-14.  Defendants' only response to this authority is stating that there is "authority to the contrary," *see* Opp'n at 14, citing to *Franklin v. Massachusetts,* 505 U.S. 788 (1992).[3]  But *Franklin* is inapposite authority that, in part, finds that the Administrative Procedure Act—a statute that does not even contain the "officer or employee" language at issue here—does not apply to the President because the President "is not an agency within the meaning of the Act."  *Id*. at 796.

Congress also structurally precluded the President's reach by stating that the CPB is not an "agency or establishment of the United States," 47 U.S.C. § 396(b), and that members of the CPB's board of directors are not officers or employees of the United States, 47 U.S.C. § 396(d)(2).  Put simply, any Article II power the President may possess as an incident of his power to appoint can exist only with respect to *executive officers*.  Congress explicitly stated that CPB is not an executive agency, and that its board members are not officers or employees of the United States, taking the extraordinary step of expressly insulating it from government control.  As *Severino* holds, because Congress has by the plain text of the authorizing statute *and* by the statutory scheme indicated that the President may not be afforded such a right, he does not have any power, implied or otherwise,

---

[3] Defendants also cite to *Collins v. Yellen¸* 594 U.S. 220 (2021), for the proposition that, because the Broadcasting Act specifically mentions the President in one section, its omission of the President in § 398(a) signifies purposeful omission.  *See* Opp'n at 14.  This argument is not persuasive, however.  Because the President is an officer for purposes of statutory construction, Congress **did** expressly mention the President in § 398(a).

to remove CPB's Board members.  71 F.4th at 1044.

## II.    LEBRON DOES NOT APPLY HERE

Defendants argue that the Supreme Court's rulings in *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995) and *Dep't of Transp. v. Ass'n of Am. Railroads,* 575 U.S. 43 (2015) apply, and that CPB should be considered a governmental entity under them.  *See* Opp'n at 15-24.  But these cases are distinguishable on both factual and legal grounds and therefore provide no authority for concluding, contrary to the clear text of the Broadcasting Act, that CPB is part of the executive branch for purposes of construing the President's authority to remove its Board members.

### A.    The CPB Is Not Like Amtrak

Defendants claim that CPB is just like Amtrak because "the CPB was created by statute in exactly the same manner as Amtrak . . . ."  Opp'n at 18.  But Amtrak's organic statute is materially different than the Broadcasting Act authorizing the creation of CPB.  As a threshold matter, CPB's Board members "shall be selected from among citizens of the United States (***not regular full-time employees of the United States***)." *See* 47 U.S.C. § 396(c)(2) (emphasis added). By contrast, the Secretary of Transportation has always held a seat on Amtrak's Board of Directors.  *See* P.L. 91-518, §303(a) ("At all times the Secretary [of Transportation] shall be one of the members of the board of directors . . . .").  The Secretary of Transportation's deep involvement does not end there, though, as the Secretary, "acting in cooperation with other interested Federal agencies and departments[,]" was responsible for initially identifying the routes Amtrak trains were to take.  *Id*. at § 201.  Beyond the involvement of the Secretary of Transportation, Amtrak's statute also generally allows for its directors to be employees of the federal government.  *See id*. at § 303(a).

In addition, unlike the Broadcasting Act, which states that no officer or employee of the United States may exercise any supervision, direction, or control over it, Amtrak's organic statute

9

required **Presidential approval** of all actions of its incorporators before they took them.  *Id*. at §302 ("The incorporators shall take whatever actions are necessary to establish [Amtrak], including the filing of articles of incorporation, as approved by the President.").  Amtrak was required to "transmit to the President and Congress" annual reports.  *Id*. at § 308(a).  If Amtrak were unable to come to agreement with private railroads on terms to use their rails and routes, the Interstate Commerce Commission was authorized to use the coercive power of the Federal Government to "order the provision" of those services on Amtrak's behalf.  *Id*. at § 402(a).  Congress created an advisory panel, "appointed by the President" to "advise the directors of [Amtrak] on ways and means of increasing capitalization for [Amtrak]."  *Id*. at § 502.  Two members of this "advisory panel" were to be "representative[s] of the Secretary of the Treasury . . . ."  *Id*. at § 501.  And Congress explicitly defined Amtrak to be a "mixed-ownership Government corporation" under the Government Corporation Control Act.  *Id*. at §804.  The Broadcasting Act lacks such provisions, and instead consistently states both that CPB is a private entity and that no federal governmental person or entity may exercise any control over it.

CPB simply is not comparable to Amtrak.  *See*, *e.g.*, Slavitt Dec. at ¶13 (highlighting factual differences).  Indeed, numerous Executive agencies have recognized that CPB is **not** a governmental entity.  This includes the National Archives and Records Administration which has published the Government Manual for over 80 years and tellingly failed to identify CPB anywhere among its listing of governmental and quasi-governmental agencies covering over 2,000 pages.  *See, e.g.*, SOF, ¶¶ 20-23.  It also includes the Federal Emergency Management Agency ("FEMA"), which, as recently as June 2025 in related litigation pending in this District, submitted a sworn declaration to the Court by FEMA's Acting Associate Administrator for the Office of National Continuity Programs, Thomas Breslin, confirming that CPB's federal funds were frozen under a

January 28, 2025 directive issued by the Secretary of Homeland Security concerning grants *to* non-governmental organizations.  *See* Slavitt Dec. ¶¶ 14-16; *Corporation for Public Broadcasting v. FEMA*, No. 1:25-cv-00740, Dkt. No. 33-1 at ¶¶ 5-6 (D. D.C. June 24, 2025); SOF ¶ 14.

      **B.**       **CPB Is Not Subject To Governmental Control**

Defendants argue that the federal government controls CPB because it "retains for itself permanent authority to appoint a majority of the directors . . . ."  Opp'n at 19.  But the key to this third prong of the *Lebron* analysis is ***permanency*** of government control,(*see Herron v. Fannie Mae*, 861 F.3d 160, 168 (D.C. Cir. 2017), which the government does not maintain over the CPB. Indeed, the federal government expressly maintains no control, temporary or otherwise, over the CPB.  The authority to appoint directors, by itself, does not equal permanent government control, particularly here where the Broadcasting Act explicitly prohibits the federal government from doing so.

In *Herron*, the D.C. Circuit found that Fannie Mae was not a governmental entity, despite it being under conservatorship by the Federal Housing Finance Administration, because "the conservatorship does not amount to *permanent* government control."  *Id.* at 169. These conservatorship powers were "'for the purpose of reorganizing, rehabilitating, or winding up the affairs' of Fannie Mae."  *Id.* at 169 (quoting 12 U.S.C. § 4617(a)(2)).  If the FHFA exercising such sweeping conservatorship powers over Fannie Mae does not suffice for government control, then the CPB—who by statute cannot have any control, direction, or supervision exercised over it by the federal government—cannot meet this standard either.

Defendants' other support on this point falters as well.  *See* Opp'n at 19-20.  The simple facts that CPB receives federal funds, has statutory goals it is to achieve, and must submit reports to Congress do not establish it as a governmental entity.  The Supreme Court has found such facts

insufficient under the state action doctrine (which serves a purpose similar to the Court's jurisprudence under *Lebron*).  *See, e.g., Blum v. Yaretsky,* 457 U.S. 991, 1011 (1982) ("That program undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the court of its business."); *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 543-44 (1987) ("The fact that Congress granted it a corporate charter does not render the USOC a government agent . . . Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government . . . The Government may subsidize private entities without assuming constitutional responsibility for their actions.").  The fact that the Supreme Court noted these aspects of Amtrak in its analysis is irrelevant given the multiple significant differences between the CPB and Amtrak, as noted in Section A, above.  And of course, nowhere in Amtrak's organic statute is there a provision prohibiting "any department, agency, officer, or employee of the United States" from exercising "any direction, supervision, or control" over it:  but that exact provision applies to the CPB.  47 U.S.C. § 398(a).

## C.    Lebron and Department of Transportation Are Legally Distinguishable

In addition to the factual differences between CPB and Amtrak, *Lebron* and *Department of Transportation* arose in a distinct legal context. Both *Lebron* and *Department of Transportation* considered Amtrak to be a government actor for purposes of allegations of constitutional violations against individuals.  *Lebron,* 513 U.S. at 394 ("[Amtrak] is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution."); *Dep't of Transp.,* 575 U.S. at 45-46 ("Respondent alleges the metrics and standards must be invalidated on the ground that Amtrak is a private entity….This argument rests on the

Fifth Amendment Due Process Clause and the constitutional provisions regarding separation of powers.").  By contrast, this is a case brought by CPB against the government challenging the President's removal power; it is not about individual constitutional rights, whether arising from the Bill of Rights or the Constitution's structural guarantee of separation of powers.

Defendants sidestep this key distinction by quoting a section of *Department of Transportation* out of context, claiming it applies across the board for constitutional separation of powers purposes.  *See* Opp'n at 17.  In both *Lebron* and *Department of Transportation*, the Supreme Court held that individuals were able to bring constitutional claims against Amtrak.  *Lebron,* 513 U.S. at 394; *Dep't of Transp.,* 575 U.S. at 55.  Neither case held that Amtrak was a governmental entity in the distinct context of Presidential removal powers, and neither case should be extended to that context here.

### D.    The CPB Does Not Wield Executive Power

Even if the Court were to determine that CPB is a governmental entity under *Lebron*, despite Congress' express directive to the contrary, it does not wield executive authority.  As noted in Section I, above, the President only possesses authority to remove executive officers.  The Defendants argue that "nothing about the CPB is legislative[,]" *see* Opp'n at 24, but this is backwards—nothing about the CPB and what it does is executive in nature, and for the Court's purposes, that is all that matters.  Because the CPB cannot be construed to wield executive authority, the President has no authority to remove any CPB officer or employee.

The Constitution separates our government into "three defined categories, Legislative, Executive, and Judicial."  *Bowsher v. Synar,* 478 U.S. 714, 721 (1986).  "The declared purpose of separating and dividing the powers of government, of course, was to diffuse power the better to secure liberty."  *Id*. (cleaned up).  "Although not 'hermetically' sealed from one another, the

powers delegated to the three branches are functionally identifiable." *I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983). "[T]he Framers 'built into the tripartite Federal Government . . . a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of another." *Mistretta v. United States*, 488 U.S. 361, 382 (1989) (quoting *Buckley v. Valeo,* 424 U.S. 1, 122 (1976)). Though different, "the Framers did not require—and indeed rejected—the notion that the three Branches must be entirely separate and distinct." *Id.* at 379. The Supreme Court has "upheld statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment." *Id.* at 382.

The functions of the CPB are not executive. In *Buckley v. Valeo*, the Supreme Court addressed the different functions of the Federal Election Commission, noting that its "determinations of eligibility for funds and even for elective office itself . . . are more legislative" than the Commission's enforcement functions, which were executive in nature. 424 U.S. 1, 140-41 (1976). CPB's role in promoting the role of public broadcasting nationwide is more similar in nature to these duties—identifying recipients of funds and determining eligibility. *See* Slavitt Dec. at ¶1-2, 5. Unlike the Federal Election Commission, CPB has no enforcement powers, and none of its responsibilities bear the hallmarks of executive power set forth in *Buckley*. *See Buckley*, 424 U.S. at 138 (describing executive functions of the Commission).

Even if the CPB were governmental in nature, it does not offend our constitutional order for it to perform its functions without interference from other actors in the government, including the President, unless Congress has vested in it "powers that are more appropriately performed by the other Branches or that undermine the integrity" of the other Branches: "Our constitutional principles of separation of powers are not violated, however, by mere anomaly or innovation." *Mistretta*, 488 U.S. at 385. Similar to the sentencing commission in *Mistretta*, the CPB's role in

14

promulgating Congressionally-designated objectives through a private corporation cannot "possibly be construed as preventing" the Executive Branch "from accomplishing its constitutionally assigned functions." *Id.* at 396 (quoting *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977)).

The duties of the CPB, such as grantmaking in connection with radio and television broadcasting, are not quintessential functions of the government, let alone functions that are inherently executive functions. As the Supreme Court has already found, public broadcasting is not a traditional function of government: "The relevant function in this case is operation of public access channels on a cable system. That function has not traditionally and exclusively been performed by the government." *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 810 (2019). *See also id.* at 811 ("In short, operating public access channels on a cable system is not a traditional, exclusive public function within the meaning of this Court's cases."). And grantmaking and contracting themselves are activities routinely performed by private and government entities alike and therefore are irrelevant to the authority of the President to remove CPB's Board members. If anything, CPB is more akin to the U.S. Olympic Committee, which the Supreme Court has previously held is not a government actor. *U.S. Olympic Committee*, 483 U.S. at 544-55 ("The act merely authorized the USOC to coordinate activities that always have been performed by private entities. Neither the conduct nor the coordination of amateur sports has been a traditional government function.").

Because the CPB wields no executive power, the President had no authority under Article II of the Constitution to remove its directors. As a result, summary judgment must enter in favor of Plaintiffs, and the Defendants' cross-motion for summary judgment must be denied.

**III.    THE PRESIDENT HAS NO STATUTORY AUTHORITY TO REMOVE CPB'S DIRECTORS UNDER DISTRICT OF COLUMBIA LAW**

Just as the President lacks any authority under Article II of the Constitution to remove CPB's Board members at his whim, he lacks any authority under District of Columbia law to unilaterally remove CPB's directors for three (3) reasons.[4]

First, D.C. Code § 29-406.08(e), which Defendants' rely upon, has no applicability to the interpretation of the Broadcasting Act, as a matter of law.  This is because when the 1967 Broadcasting Act was enacted by Congress, D.C. Code § 29-406.08(e) did not exist and there was no D.C. statutory authority vesting the President with any removal authority.  When one statute adopts or references the provisions of a separate statute, "the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute.  Such adoption takes the statute as it exists *at the time of adoption and does not include subsequent additions or modifications by the statute*."  *See Hassett*, 303 U.S. at 314 (emphasis added).  *See also Jam v. International Fin. Corp.*, 586 U.S. 199, 209-210 (2019) ( "a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute *as it existed when the referring statute was enacted, without any subsequent amendments*.") (emphasis added).  Since Congress passed the Public Broadcasting Act referencing the District of Columbia Nonprofit Corporation Act by name, D.C. Code § 29-406.08(e) has no application to this matter.

Second, the Broadcasting Act, by its express terms, does not allow resort to the D.C. Nonprofit Corporation Act to the extent doing so would be inconsistent with the Broadcasting Act.  Defendants rely upon D.C. Code § 29-406.08(e), but any application of that provision that would

---

[4] D.C. Code § 29-406.08(e) provides that: "Except as otherwise provided in the articles of incorporation or bylaws, a director who is appointed by persons other than the members may be removed with or without cause by those persons."

allow the President to unilaterally remove CPB's Board members at will would fundamentally conflict with the Broadcasting Act's non-interference provisions prohibiting any "department, agency, officer, or employee of the United States" from exercising any "direction, supervision, or control over… the Corporation" and its legislative intent to create an independent, privately managed non-profit corporation.  47 U.S.C. § 398(a).

Third, even if D.C. Code § 29-406.08(e) could be read into the Broadcasting Act, it still would not allow the President to unilaterally remove any CPB director.  This is because under its express terms, § 29-406.08(e) provides that a director who is appointed by a multi-party process can only be removed by the same multi-party process that appointed her.  Here, it is undisputed that the President may not unilaterally place any directors onto the Board of CPB.  Rather, under the clear terms of the Broadcasting Act, he must *jointly* act "by and with" the advice and consent of the Senate, rendering it a joint two-party appointment process.  *See* 47 U.S.C. § 396(c)(1); *N.L.R.B. v. Enter. Leasing Co. Se., LLC*, 722 F.3d 609, 648 (4th Cir. 2013) (the appointment clause power, which provides that the president shall appoint, by and with the advice and consent of the senate, "was to be exercised 'jointly' by the President and Senate").  As a result, any reliance on D.C. Code § 29-406.08(e) for removal would require joint removal by both the President and the Senate, as a matter of corporate law and clear statutory construction.  A contrary interpretation of the plain language of either the Broadcasting Act or D.C. Code § 29-406.08(e) would be clear error.

A.     **D.C. Code § 29-406.08(e) Postdates the Broadcasting Act and Does Not Permit Removal Here**

When the 1967 Broadcasting Act was enacted by Congress, D.C. Code § 29-406.08(e) did ***not*** exist.  Rather, the "District of Columbia Nonprofit Corporation Act" referenced in the

Broadcasting Act and in effect in 1967 was the 1962 D.C. Nonprofit Corporation Act.    The

"reference canon," recognized as "well[-]settled" by the Supreme Court, provides that:

> Where one statute adopts the particular provisions of another by a specific and
> descriptive reference to the statute or provisions adopted, the effect is the same as
> though the statute or provisions adopted had been incorporated bodily into the
> adopting statute. ***Such adoption takes the statute as it exists at the time of adoption
> and does not include subsequent additions or modifications by the statute so
> taken unless it does so by express intent.***

*Hassett*, 303 U.S. at 314 (emphasis added).    *See also Brown*, 602 U.S. at 116 (under the reference

canon, "reference to another statute by specific title or section number—such as ACCA's reference

to 21 U.S.C. § 802—in effect cuts and pastes the referenced statute as it existed when the referring

statute was enacted, *without any subsequent amendments*") (emphasis in original); *Leopold v.

Manger*, 102 F.4th 491, 502 (D.C. Cir. 2024) (affirming that reference to statute relating to

inspector general prohibited consideration of future amendments to that statute); *Shoshone-

Bannock Tribes of Fort Hall Rsrv. v. U.S. Dep't of the Interior*, 2025 WL 2424422, at *11 (9th

Cir. Aug. 22, 2025) (reference in act to broad range of federal laws governing land disposal did

not constitute reference to a general body of law sufficient to incorporate future amendments);

*United States v. Ramsey*, 2022 WL 596378, at *9 (E.D. Pa. Feb. 28, 2022) (refusing to apply

subsequent amendments to referenced statute).

  As the Supreme Court has explained, under the reference canon, when a statute refers to

another statute by name or statutory citation, it effectively incorporates the referenced statute only

as it existed at the time when the referring statute was enacted.    This is in contrast to a statute

making a general reference to a body of law.

> According to the "reference" canon, when a statute refers to a general subject, the
> statute adopts the law on that subject as it exists whenever a question under the
> statute arises. For example, a statute allowing a company to "collect the same tolls
> and enjoy the same privileges" as other companies incorporates the law governing
> tolls and privileges as it exists at any given moment. ***In contrast, a statute that***

> *refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments.*

*Jam*, 586 U.S. at 209–10 (internal citations omitted) (emphasis added).

Here, the Broadcasting Act referenced the 1962 D.C. Nonprofit Corporation Act by name. *See* 47 U.S.C. § 398(b) ("The Corporation shall be subject to the provisions of this section, and, to the extent consistent with this section, to the District of Columbia Nonprofit Corporation Act."). Further, in enacting the Broadcasting Act, Congress did not prospectively adopt any future amendments to the D.C. Nonprofit Corporation Act. As a result, the Court is constrained to interpret the Broadcasting Act's reference to the 1962 D.C. Nonprofit Corporation Act as it existed at the time of the enactment of the Broadcasting Act.

There is nothing in the 1962 D.C. Nonprofit Corporation Act which gave the President the unilateral power to remove any director from CPB. Rather, in 1967, the relevant removal provision in the 1962 D.C. Nonprofit Corporation Act provided:

> A director may be removed from office pursuant to any procedure therefor provided in the articles of incorporation or the bylaws, and if none be provided may be removed at a meeting called expressly for that purpose, with or without cause, by such vote as would suffice for his election.

Pub. Law 87-569 §19(d). This provision points first to the Articles of Incorporation or the bylaws of the corporation.

Here, CPB's Articles of Incorporation are silent as to the removal of directors. *See* Supp. Slavitt Decl. at Ex. A, Articles of Incorporation at Art. V, *passim* (Dkt. No. 12-1 at ECF page 23). CPB's Bylaws in effect as of April 2025 were also silent as to the removal of directors. *See id.* at Ex. A, By-Laws of the Corporation for Public Broadcasting *as amended September 13, 2021*, at

Art. II (Dkt. No. 12-1 at ECF pages 46-49).[5]  As no removal procedure for directors is provided by CPB's Articles of Incorporation or By-laws in effect at the time, the removal provision of the 1962 D.C. Nonprofit Corporation Act sets forth the procedure to be followed.  That procedure does not allow the President to unilaterally remove CPB's directors.

Moreover, as set forth in CPB's opening summary judgment brief, subsequent amendments to the Broadcasting Act do not adopt or incorporate D.C. Code § 29-406.08(e).  Indeed, the 1962 D.C. Nonprofit Corporation Act remained largely unchanged for close to 50 years.  In 2011, the D.C. Council[6] enacted an entirely different D.C. nonprofit corporation code which overhauled and replaced the 1962 act and included D.C. Code § 29-406.08(e).[7]  However, Congress has never amended the Broadcasting Act to adopt  D.C. Code § 29-406.08(e)'s removal provisions.  Indeed, between 2011, when D.C. adopted the new Nonprofit Corporation Act, and today, the Broadcasting Act was only amended once in 2018, as part of an omnibus appropriations bill.  That amendment authorized CPB to use funds for interconnection system upgrades and repealed certain annual reporting requirements.  Importantly, it did not address incorporation, governance, or director removal provisions whatsoever, nor did it reference the D.C. Nonprofit Corporation Act

---

[5] CPB's By-laws include a provision for removal of *officers*, but not *directors*.  *See* Supp. Slavitt Decl. at Ex. A, By-Laws of the Corporation for Public Broadcasting *As amended September 13, 2021*, at § 4.04 (Dkt. No. 12-1 at ECF pages 51-52).  CPB's directors, however, are not "officers" of CPB, which are limited to the Chair of the Board of Directors, the Vice Chair of the Board of Directors, the President and Chief Executive Officer, the Executive Vice Presidents, the Secretary, the General Counsel, and the Treasurer.  *Id.* at § 4.01 (Dkt. No. 12-1 at ECF page 51).  The removal authority for officers is granted to either the Board of Directors, or the President and Chief Executive Officer, of CPB, depending on who appointed the officer.  *Id.* at § 4.04.

[6] The 1962 act was passed by Congress, not the D.C. Council, prior to implementation of the D.C. Home Rule Act.  *See* Pub. Law 87-569 (Aug. 6, 1962).  The D.C. Home Rule Act, establishing the D.C. Council and its authorities, was passed eleven years later, in 1973.  *See* P.L. 93-198 (Dec. 24, 1973).

[7] D.C. Law 18-378, which includes the D.C. Nonprofit Corporation Act of 2011, was introduced as Bill No. 18-500 and referred to the Committee on Public Services and Consumer Affairs, whereafter the Mayor signed it on February 27, 2011.

of 2011 at all. *See* Consolidated Appropriations Act of 2018, Pub. Law No. 115 141, 132 Stat. 757 (Mar. 23, 2018). Such unrelated amendments to the Broadcasting Act cannot be understood impliedly to incorporate the D.C. Nonprofit Corporation Act of 2011. *See, e.g., Alexander v. Sandoval,* 532 U.S. 275, 292 (2001) (rejecting notion that Congressional inaction or isolated amendments signal approval of a particular statutory interpretation; "When, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments, we have spoken more bluntly: 'It is 'impossible to assert with any degree of assurance that congressional failure to act represents' affirmative congressional approval of the Court's [subsequent] statutory interpretation.'"); *Pub. Citizen, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 332 F.3d 654, 668 (D.C. Cir. 2003) ("Congress has neither re-enacted the entire PRO statute nor amended § 1320c–3(a)(14) at all. Rather, it has simply enacted a series of isolated amendments to other provisions."); *United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133, 152 (D.D.C. 2015), *aff'd sub nom*. *United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir. 2017) ("The ratification canon is of 'little assistance' where Congress has not re-enacted the entire statute at issue or significantly amended the relevant provision….Here, Congress did not re-enact the entire Lacey Act and did not amend the relevant language in any of the three subsequent enactments upon which Defendants rely.").

As a result, D.C. Code § 29-406.08(e) does not permit the President to remove CPB's independent Board members. And Defendants have not pointed to any provision of the 1962 D.C. Nonprofit Corporation Act that would authorize such removal.

**B.**     **Any Application of D.C. Code § 29-406.08(e) That Would Allow the President to Unilaterally Remove CPB Board Members at Will Would Be Fundamentally Inconsistent With the Broadcasting Act**

In light of the Broadcasting Act's non-interference provisions, any application of D.C. Code § 29-406.08(e) that would allow the President to unilaterally remove CPB Board members at will would be inconsistent with—and therefore expressly prohibited by—the Act.  In authorizing the creation of CPB, Congress made it clear that CPB was only subject to the D.C. Nonprofit Corporation Act "to the extent consistent" with the Broadcasting Act.  *See* 47 U.S.C. § 396(b). Even assuming arguendo that D.C. Code § 29-406.08(e)'s 2011 removal provision could be read into the Broadcasting Act, it would still not apply because it is fundamentally inconsistent with the Broadcasting Act's broad non-interference provisions, which were designed to preclude the type of removal undertaken by the President here.

Congress established CPB as an *independent* nonprofit corporation and "not…an agency or establishment of the United States Government," *id*. at § 396(b), and Congress expressly prohibited "any … *officer*, or employee of the United States [from] exercis[ing] any direction, supervision, or control … over [CPB]…." 47 U.S.C. at § 398 (emphasis added).  These provisions, as described above, reflect Congress's clear purpose to preclude any government (or partisan) interference in CPB.  *See* S.Rep.No.222, 90th Cong., 1st Sess. 4, 11 (1967) ("An independent entity supported by Federal funds is required to provide programs free of political pressures."); President Johnson's Remarks Upon Signing the Public Broadcasting Act of 1967 ("This Corporation …. *will be carefully guarded from Government or from party control. It will be free, and it will be independent*-and it will belong to all of our people.") (emphasis added). In light of that purpose, the terms "officer" and "employee" in the Broadcasting Act's noninterference provision should be given their broadest possible meanings to encompass the whole of the

executive branch. To read them as excluding the President, as Defendants contend, would gut their essential point. Defendants' assertion that some statutes construe these terms not to encompass the President should fail for this reason.

Defendants' assertion that the President is not an "officer" or "employee" also fails to take account of controlling caselaw from the Supreme Court and the D.C. Circuit, as well as from other federal courts, not to mention then-former President Trump's own admissions, that the terms "officer" and "employee" in other statutory contexts can include the President.  As the Federal Circuit recognized:

> There is, however, massive historical support—in the Constitution itself, in two centuries of Supreme Court jurisprudence, in significant opinions of the lower courts, in federal statutes, and in myriad other sources—for the proposition that the President is an 'officer' of his country.

*Motions Sys. Corp. v. Bush*, 437 F.3d 1356, 1375 (Fed. Cir. 2006) (concurrence).  Numerous other courts, including the Supreme Court, have agreed.  *See Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587, 592 n.4, 602, 618  (D.C. Cir. 1974) (ruling that President is an executive officer who is subject to mandamus proceedings under 28 U.S.C. § 1361, which encompass actions to "compel an *officer* or employee of the United States…to perform a duty") (emphasis added); *Nat'l Wildlife*, 626 F.2d at 923 ("[m]andamus is not precluded because the federal official at issue is the President of the United States" where statute encompassed "an *officer* or employee of the United States") (emphasis added).  *See also Carroll*, 49 F.4th at 763, 770 (holding that President Trump was an officer or employee under the Westfall Act; "[T]the President of the United States fits comfortably within the statutory description's plain language."); *Operation Rescue Nat. v. U.S.*, 147 F.3d 68, 71 (1st Cir. 1998) (stating that the FTCA covers "all officers, up to the president"); *Almond Bros. Lumber Co. v. U.S.*, 34 C.I.T. 370, 383 (2010) ("Both the President and the [United States Trade Representative] are officers of the United States" because "status as an officer of the United States

stems from the Constitution itself, for the President is the essential constitutional officer under Article II of the Constitution.").  Indeed, then-former President Trump conceded in past litigation that the President is an officer.  *See Carroll v. Trump,* Case 1:20-cv-07311-LAK, Document 21 at p.8, (S.D.N.Y. Oct. 19, 2020) ("the President, who is fairly characterized as both an 'officer' and 'employee' of the government.") ) ; *Carroll v. Trump,* Docket No. 20-03978 (2d Cir. Nov 25, 2020), BL-25, at pp. 5-6, 13 (noting that "Presidents plainly are employees of the Government" and that President "could only be an office of the Government. . . .").

Allowing the President unilaterally to remove CPB Board members—especially, as here, without any reason for doing so—directly conflicts with the Broadcasting Act's noninterference provision.  As the Supreme Court and the D.C. Circuit have repeatedly recognized, removal is one of the most powerful forms of control and supervision.  *See*, *e.g., Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. __, 2025 WL 1773628, at *10 (U.S. June 27, 2025) ("At-will removal is one means of ensuring supervision and direction.");  *Seila*, 591 U.S. at 204 ("The President's power to remove—***and thus supervise***—those who wield executive power on his behalf follows from the text of Article II, was settled by the First Congress.") (emphasis added); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 510 706 (2010) ("In particular, we noted that the *power to remove* officers at will and without cause '*is a powerful tool for control.'*") (emphasis added); *Edmond v. United States*, 520 U.S. 651, 664 (1997) ("The power to remove officers…is a powerful tool for control."); *Dellinger v. Bessent*, 2025 WL 559669, at *16 (D.C. Cir. Feb. 15, 2025) ("The President must be able to remove—and thus maintain a degree of control over—subordinates through whom he exercises his executive power.").

As Justice Kavanaugh explained in *Kennedy:*

> This Court has said that ***the authority to remove an officer at will is a powerful tool for control***. The reason is straightforward: Once an officer is

appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey. An officer's presumed desire to avoid removal generally creates a here-and-now subservience. ***The prerogative of at-will removal of a subordinate, then, often carries with it the power to supervise and direct that subordinate.*** . . . In short, through the power to remove and replace Task Force members at will, the Secretary can exert significant control over the Task Force

2025 WL 1773628 at *9-10 (emphasis added).

The exercise of at-will removal authority is thus plainly inconsistent with the Broadcasting Act's mandate that the government may not "exercise any direction, supervision, or control over…[CPB]." 47 U.S.C. § 398(a). Regardless of whether a Board member's failure to attend at least half of all Board meetings is the sole basis for removal, *id.* at § 396(c)(7), the Broadcasting Act must be applied, at minimum, to preclude the President from directing, supervising, or controlling the CPB through the at-will removal (or threat of removal) of its Board members. If the President were to be permitted to fire CPB Board members based on mere policy disagreement, or political affiliation, that would give him plenary supervisory and directive authority over CPB— an authority expressly denied him by the Broadcasting Act's noninterference provision.

Moreover, the Act itself contains an anti-removal provision. The Act underscored the strict limitations on removal by providing the only basis for removal under the Broadcasting Act as failure to attend at least half of all Board meetings. *Id.* at § 396(c)(7). Congress, therefore, chose to include **only** this statutory basis of removal. The canon of construction "*expressio unius est exclusio alterius*"—mention of one thing implies exclusion of the other—is particularly compelling given the statutory provisions of the Broadcasting Act and the legislative history and purpose reflecting a desire to create an "independent entity" free from "political pressures" and free from "Government control." *See* President Johnson's Remarks Upon Signing the Public Broadcasting Act of 1967 ("This Corporation …. *will be carefully guarded from Government or*

*from party control. It will be free, and it will be independent*-and it will belong to all of our people.") (emphasis added).

As a result, even assuming arguendo that D.C. Code § 29-406.08(e)'s 2011 removal provision could be read into the Broadcasting Act despite Congress' failure to ratify or adopt that provision into the Act, it would still not be operable because it is fundamentally inconsistent with the Broadcasting Act's broad non-interference and anti-removal provisions which were designed to preclude the very type of control and supervision by the President that at-will removal would allow.

### C.    Both the President and the Senate Were Required To Remove a Director

Even if D.C. Code § 29-406.08(e)'s 2011 removal provision could be read into the Broadcasting Act, it would still not allow the President to unilaterally remove CPB Board directors. This is because, under its plain terms, D.C. Code § 29-406.08(e) provides that a director who is appointed by a multi-party process, can only be removed by the same multi-party process that appointed her. *See* D.C. Code § 29-406.08(e) ("A director who is appointed **by persons** other than the members may be removed with or without cause **by those persons**.") (emphasis added). This provision reflects a recognition in corporate and municipal law that those who **collectively** appoint must **collectively** remove.

In this context—that of corporate law—precedential construction of the President's appointment power under Article II of the Constitution does not apply. As explained at length above, CPB is a private nonprofit corporation that is "not…an agency or establishment of the United States Government," over which the President has no inherent Article II executive authority. *See* 47 U.S.C. § 396(b). Through the Broadcasting Act, Congress granted the President appointment authority, as a **corporate** power. *Id.* at § 396(c)(1). Congress could have granted that

appointment power to anyone. Because the directors are not officers of the United States, the Appointments Clause of the U.S. Constitution does not apply. Consequently, in the context of corporate law, there is nothing unique about the President's role as appointer simply because he is the President; he serves the function as would any other person or body empowered by statute or corporate governance documents to appoint a corporate director.

Corporate law recognizes the well-established principle that the authority to remove must be exercised collectively by those who shared in the power to appoint. *See, e.g., Schlafly v. Eagle Forum,* 970 F.3d 924 ( Cir. 2020) at 935 ("If a director is elected by a class of voting members entitled to vote, directors or other electors, that director *may be removed only by the same class of members entitled to vote, directors or electors which elected the director*.") (emphasis added); *Wingert v. Scenic Heights Subdivision Property Owners Association, Inc.*, 2008 WL 2778017 (Tex. App. July 16, 2008) at *5 ("In the absence of a provision providing for removal, a director may be removed from office, with or without cause, by the persons entitled to elect, designate, or appoint the director. If the director was elected to office, removal *requires an affirmative vote equal to the vote necessary to elect the director*.") (emphasis added); *Boatmen's First Nat'l Bank v. Southern Mo. Dist. Council of The Assemblies of God*, 806 S.W.2d 706, 714 (Mo. Ct. App. 1991) ("The body which appoints a director may also remove a director.").

Regardless of how a Presidential appointment with the advice and consent of the Senate might be regarded for constitutional purposes, for purposes of applying D.C. corporate law, the appointment process to become a board director should be considered to be a <u>joint</u> one between the President and Senate. Without the Senate's consent, the Board member's appointment is ineffective, thus indicating the critical role played by that body. *See Black's Law Dictionary* 1602 (6th ed. 1991) ("with consent" conveys that "appointment under such provision is ineffective until

confirmed"); *see also* 3 McQuillin Mun. Corp. § 12:141 (3d ed.) (Confirmation of appointment) ("With some exceptions, laws and municipal charters frequently require the appointment to be approved or confirmed by some officer or body, or board, as the council or legislative body of the municipal corporation. This provision is usually mandatory; hence, without approval or confirmation as prescribed, the appointee is not authorized to enter upon the duties of the office or employment.").

Similarly, both within the appointment context and in other contexts, courts have interpreted "by and with" to require *joint* action. *See, e.g., N.L.R.B.*, 722 F.3d at 648 (the appointment clause power, which provides that the president shall appoint, by and with the advice and consent of the senate, "was to be exercised '*jointly'* by the President and Senate") (emphasis added); *Simonds v. Hassett*, 58 F. Supp. 911, 913 (D. Mass. 1945) (evaluating a clause in a trust that permitted payment of the principal to the beneficiary "by with the consent of the trustees"; "Further, and of decisive importance, the plaintiff was not entitled as a matter of right to payments of principal whenever it suited her to call for them. She could only obtain payment of principal with the consent of the trustees."). As a result, even if D.C. Code § 29-406.08(e) could be read into the Broadcasting Act, its plain terms would require both the President and the Senate to remove any CPB Board member.

This Court in ruling on Plaintiffs' motion for a preliminary injunction President and the Senate took the position that only the president "appoints." *See* Tr. (5/14/25) at p. 17 (The COURT: "***But it is the President who appoints***. It is with the advice and consent of the Senate, ***but the appointment is purely a presidential appointment***…. it is true he can only appoint somebody with the advice and consent of the Senate, but it is the President who makes the appointment") (emphasis added). Plaintiffs respectfully submit that, in reaching this conclusion,

the Court did not have the opportunity to consider Plaintiffs' arguments that CPB's private, corporate status distinguishes this scenario, and that the roles of the President and Senate may take on a different understanding for purposes of D.C. corporate law.

Because the clear terms of the Broadcasting Act make appointment to the CPB Board a two-party process consisting of both the President and the Senate, any purported removal of a Board member under D.C. Code § 29-406.08(e) would necessarily have to involve both the President and Senate, which, of course, was not done. Thus, the President's purported removal of CPB's directors was unlawful, even if D.C. Code § 29-406.08(e) could somehow be read into the 1967 Broadcasting Act.

## IV. DEFENDANTS' OTHER ARGUMENTS ARE UNAVAILING

Beyond their defense of the President's removal power, Defendants argue that each of Plaintiffs' claims fail for separate reasons. As set forth below, Defendants' contentions regarding Counts I, III, and IV are without merit.[8]

### A. Plaintiffs' Declaratory Judgment Action Is Appropriate

With respect to Count I, Defendants argue that the Declaratory Judgment Act does not provide a private right of action and only authorizes a form of relief. *See* Opp'n at 31. While "a party seeking declaratory relief must 'have valid grounds for federal jurisdiction independent of the Act," *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 168 (D.D.C. 2017), *dismissed*, No. 17-7158, 2017 WL 9401061 (D.C. Cir. Dec. 26, 2017) (quoting *Comm. on Oversight & Gov't Reform v. Holder*, 979 F. Supp. 2d 1, 22 (D.D.C. 2013)), "[i]n determining whether such a basis for jurisdiction exists, federal courts look to 'the nature of the threatened action in the absence of

---

[8] Plaintiffs have not moved for summary judgment on Count II of their Complaint, under the Administrative Procedure Act. In response to Defendants' cross-motion for Summary Judgment on Count II, Plaintiffs withdraw Count II.

the declaratory judgment suit,'" *Id.* (quoting *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 134 S.Ct. 843, 848 (2014). "Put otherwise, they 'ask whether a coercive action brought by the declaratory judgment defendant would necessarily present a federal question' or otherwise give rise to federal jurisdiction." *Id.* (quoting *Holder*, 979 F. Supp. 2d at 22; citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.")). It is "the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 244 (1937).

Here, the nature of the coercive action in question is the purported removal by the President of Ms. Diane Kaplan, an action that raises numerous federal questions giving rise to federal jurisdiction in this lawsuit. Underscoring this point, Defendants, albeit through a different name, have now brought a *quo warranto* action under District of Columbia Code § 16-3501, as a related action addressing the same issue present in this matter, seeking to enforce the President's removal of CPB's directors. *See* Complaint, *United States v. Ross, et al.*, No. 1:25-cv-2261 (D.D.C. July 15, 2025) (Dkt. No. 1). Defendants' argument, therefore, is inconsistent with their own actions, as well as being legally incorrect. Consequently, Defendants' argument here regarding the Declaratory Judgment Act does not bar relief. *See Medtronic*, 134 S.Ct. 843 at 848; *Const. Laborers*, 463 U.S. at 19; *Haworth*, 300 U.S. at 244; *Holder*, 979 F. Supp. 2d at 22; *Sharp*, 292 F. Supp. 3d at 168.

### B.    Plaintiffs' Claim Based on Separation of Powers and *Ultra Vires* Action is Valid

With respect to Count III, Defendants argue that there is no "specific prohibition" of the

President's action contained within the Broadcasting Act.  Opp'n at 33.  Defendants' argument

fails because it ignores the express provisions of the Constitution and the Broadcasting Act.

"The Government of the United States … derives its authority wholly from the powers

granted to it by the Constitution, which is the only source of power authorizing action by any

branch of Government. It is a government of ***limited, enumerated, and delegated*** powers."

*Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 569, 573 (D.D.C), *aff'd*, 343 U.S. 579, 72

S. Ct. 863 (1952).  Thus, "[t]he President's authority to act, as with the exercise of any

governmental power, 'must stem either from an act of Congress or from the Constitution itself[,]'"

or from a combination of the two.  *Medellin v. Texas*, 552 U.S. 491, 523, 128 S.Ct. 1346 (2008).

The Constitution vests exclusive power over federal spending and lawmaking with Congress. U.S.

Const. Art. I Secs. 1, 2.   The Constitution requires the President to "faithfully execute[]" the laws

of the United States.  *Id.* at Art. II Sec. 3.  These distinct roles of the co-equal branches of

government are of critical importance, and "the carefully defined limits on the power of each

Branch must not be eroded."  *I.N.S. v. Chadha*, 462 U.S. 919, 958 (1983).  Despite there being no

"separation of powers clause" in the Constitution, "that doctrine is undoubtedly carved into the

Constitution's text…."  *Trump v. United States*, 603 U.S. 593, 637–38, 144 S. Ct. 2312 (2024).

As explained at length above, Congress authorized the creation of CPB as a non-

governmental, independent organization, 47 U.S.C. § 396(b), whose directors are not officers or

employees of the United States, *id.* at § 396(d)(2).  Congress also specifically and expressly

prohibited the President from exercising any "direction, supervision, or control over… [CPB]." *Id.*

at § 398(a).  The power to remove a person from their position is one of the most powerful forms

of control and supervision.  *See,* Section III.B, *supra* at 23-27.

The Broadcasting Act prohibits the President from removing a CPB director by expressly

stating that CPB is not part of the government, that its directors are not part of the government, and that the President cannot exercise any "direction, supervision, or control" over CPB. 47 U.S.C. §§ 396, 398. Congress could hardly be more clear; anything more direct, in the manner that Defendants seem to demand, would be superfluous given the enumerated powers of the President dictated by the Constitution and the structure of CPB. As such, Defendants' argument should be rejected.

### C.   Plaintiffs' Constitutional Claims in Count IV are Valid

Lastly, with respect to Count IV, Defendants incorrectly argue that Plaintiffs are trying to improperly couch a statutory claim as a constitutional one. *See* Opp'n at 33-34 (citing *Dalton v. Specter*, 511 U.S. 462, 471 (1994) and *Glob. Health Council v. Trump*, No. 25-5097, --- F.4th ---, 2025 WL 2480618, at *6 (D.C. Cir. Aug. 28, 2025)). But Defendants' argument misconstrues the nature of Plaintiffs' claim, and Defendants' reliance on *Dalton* and *Global Health Council* is misplaced. Unlike in *Dalton* and in *Global Health Council*, the essential nature of Plaintiffs' claim is not statutory. Instead, Plaintiffs contend that the President lacked *any* authority, whether under Article II or the Broadcasting Act, to remove CPB Board members and argue that any removal power that the President may otherwise possess under Article II has been limited by Congress's enactment of the noninterference provisions of the Broadcasting Act. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 597, 637-38 (1952) ("[W]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb."). This is wholly distinct from the situations in *Dalton* and *Global Health Council*, where plaintiffs pleaded violations of the APA and Impoundment Control Act as constitutional claims.

## CONCLUSION

CPB is a private, nonprofit corporation, which Congress insulated against governmental interference and control by enacting broad non-interference provisions for its directors, including prohibiting any "officer, or employee of the United States," such as the President, from exercising any "direction, supervision, or control over… the Corporation."  As a private, non-governmental corporation that wields no executive power, the President has no inherent authority under Article II of the Constitution to unilaterally remove its Board members.

Just as the President lacks any Constitutional authority to remove CPB's Board members, he also lacks any *corporate* authority under D.C. Code § 29-406.08(e) for his purported removal of CPB's Board members.  As a result, summary judgment must enter in favor of Plaintiffs, and the Defendants' cross-motion for summary judgment must be denied.

Dated: September 19, 2025

  */s/ Jason W. McElroy*
Jason W. McElroy (D.C. Bar No. 502733)
Peter C. Nanov (D.C. Bar No. 230021)
SAUL EWING LLP
1919 Pennsylvania Avenue NW, Suite 550
Washington, D.C. 20006
Tel: (202) 295-6642
jason.mcelroy@saul.com
peter.nanov@saul.com

Jeffrey S. Robbins (Admitted Pro Hac Vice)
Joseph D. Lipchitz (Admitted Pro Hac Vice)
SAUL EWING LLP
131 Dartmouth St., Suite 501
Boston, MA 02116
Tel: (617) 912-0941
jeffrey.robbins@saul.com
 joseph.lipchitz@saul.com

*Counsel for Plaintiffs The Corporation for Public Broadcasting and the Board of Directors of the Corporation for Public Broadcasting*

33

*/s/ Trisha Anderson*
Trisha Anderson (D.C. Bar 497224)
Kaitlin Konkel (D.C. Bar 1021109)
Helia Bidad* (*Application for pro hac vice pending*)
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
tanderson@heckerfink.com
kkonkel@heckerfink.com

**Counsel for Plaintiff Diane Kaplan**

**<u>CERTIFICATE OF SERVICE</u>**


      I hereby certify that on September 19, 2025, I filed the foregoing **PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** via the Court's CM/ECF system, which will serve the same on all parties and counsel of record.


                         */s/ Jason W. McElroy*
                         Jason W. McElroy